People of the State of Illinois, Defendant in Error, v. George Henneman, Plaintiff in Error.

Gen. No. 42,675.

Opinion filed May 5, 1944. Re-hearing denied May 19, 1944.

JOHN V. CLINNIN and WM. W. SMITH, both of Chicago, for plaintiff in error; WM. W. SMITH and WM. L. CARLIN, both of Chicago, of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and JOSEPH A. POPE, Assistant State's Attorneys, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

In an indictment returned by the grand jury to the criminal court of Cook county it was charged in Count I that George Henneman on September 17, 1942 and prior thereto conspired with divers persons whose names were unknown, with malicious intent to unlaw-

fully, wrongfully, wilfully, and mischievously injure
the property of James Cappany, the same being a
restaurant known as the "Glass Cupboard," situated
at 232 W. Garfield boulevard, by throwing stones or
bricks through the windows without the consent of
Cappany; and it was charged in Count II that the de-
fendant at the same time and place injured and de-
faced the "Glass Cupboard" by throwing stones or
pieces of brick through three of its windows, damaging
the building in a sum in excess of $15. Defendant
pleaded not guilty. The case was tried before the court
and a jury. At the close of all the evidence the court
permitted the entry of a *nolle prosequi* as to the first,
or conspiracy, count, and allowed the case to go to the
jury on the remaining count charging malicious mis-
chief. The jury found the defendant guilty in manner
and form as charged in the indictment; that the value
of the property damaged was $11.30; and that the de-
fendant was 39 years of age. Motions for a directed
verdict and for a new trial were denied. The court
entered judgment on the verdict and sentenced defend-
ant to imprisonment in the House of Correction for a
term of six months and to pay a fine of $200. De-
fendant sued out a writ of error to reverse the judg-
ment.

The restaurant owned by Mr. Cappany, known as
the Glass Cupboard, is situated at the northwest
corner of Garfield boulevard (55th street) and Wells
street, Chicago. Michael O'Donnell testified that he
was having a cup of coffee in this restaurant about
1:00 a. m. on September 17, 1942, when he heard a
noise "like a brick hitting a wall." The next thing
he heard was "a window going through." He jumped
up, ran out and saw three men in the street running
north and two of them heading for an alley to the east
side of Wells street. These men entered the alley.
The third man was running north toward the west
side of Wells street. Garfield boulevard runs in an

easterly and westerly direction and Wells street in a
northerly and southerly direction. O'Donnell ran
after the third man, whom he identified as defendant,
and caught him about 200 yards north of the restau-
rant, knocked him down and beat him with his fists and
his shoes which he had taken off. The restaurant cook
Arnold Fee, came immediately afterward and also
beat defendant. The witness then led defendant back
to the restaurant. When he arrived with defendant, a
woman struck him (O'Donnell) with her purse, and led
defendant away. O'Donnell then went into the restau-
rant and picked up a brush about six inches long with
a handle on it. When he came out he saw a police
squad car in front of the restaurant. O'Donnell ran
north on Wells street and saw defendant and another
"fellow" sitting in a car parked facing north on the
west side of the street about a hundred feet north of
the place where the fight with defendant took place.
Defendant was in the driver's seat. The squad car
came up and a policeman in uniform walked over to
the car which immediately pulled away. The officer
hollered "stop" but the car continued north with the
police car after it. The witness threw the brush he
was holding at the car, shattering the rear window of
defendant's car. The witness then went back to the
restaurant where the owner was, got in the owner's
car and followed. They proceeded north on Wells
street to 53rd street, went east on 53rd street, and
when half way between Wells and Wentworth avenue
the witness saw defendant's car going west, with de-
fendant driving, and the squad car behind them. The
witness then took down the license number of defend-
ant's car.

Arnold Fee, cook in the restaurant, testified that he
heard a noise of a piece of concrete hitting the outside
of the building, so he started outside; that a piece of
concrete came through the window, so he ran outside
where he saw "a fellow throw a brick through the

window''; that the man he saw throw the brick was defendant; that the witness ran after defendant down the street; that in running witness tripped over a small lawn fence and fell down; that upon getting up he saw O'Donnell catch up with defendant and struggle with him; that he then helped O'Donnell ''beat him up'' and take him back to the restaurant; that witness then went to the home of Mr. Cappany the owner of the restaurant who lived nearby, to summon him; that when witness came back to the scene of the disturbance defendant was gone. On cross-examination witness testified that he was the first one out of the restaurant after the windows were broken. At 1:30 a. m. defendant's wife, Gertrude, together with Mrs. Edward Loftus, and Mrs. Bernard Coyle, were seated at the counter in the restaurant, having coffee; they were seated near Michael O'Donnell. Previously that evening these women had been in the company of their husbands at a tavern at 6428 Wentworth avenue. When they left the tavern the defendant did not accompany them. At about 1:00 a. m. defendant left the tavern and drove in his automobile over to the restaurant for the purpose of picking her up. He testified that at the same time he wished to pick up a friend, Arthur Lindquist, who lived directly across the street from the restaurant, and that defendant and Lindquist were going to drive to Peoria to attend a union painters' convention. Defendant's testimony is that just as he parked his car on the street someone threw pieces of brick or stone through the glass windows of the restaurant, showering defendant's wife, her companion and O'Donnell with broken glass; that great confusion ensued and that at least two men, or boys, were seen to run through an adjacent alley. The inference from defendant's testimony is that the two men, or boys, who ran through the alley were the ones who damaged the windows. Defendant testified further that O'Donnell and Fee beat him into an almost

helpless condition, and that a couple of other men, or boys, at least one of whom had a long knife, also ran out into the street; that the latter were ready to join the attack when defendant's wife and her companion came upon the scene, as also did Mr. Lindquist, who had seen a great deal of the affray from the front window of his home, having been attracted by the crashing of the glass and having seen men running into the alley alongside; that through the efforts of the women and Lindquist the defendant was rescued from his attackers. His face was so beaten and bloody that he could hardly be recognized by his friends and relatives.

Further testimony on behalf of defendant was that defendant's wife and Lindquist helped defendant into a car; that Lindquist got in with him and that they drove away.

Of the witnesses who testified for the State the only one who identified defendant as one of the culprits was Arnold Fee, the cook in the restaurant. He testified that he heard a piece of concrete hit the outside of the building, that he started out, that when he got outside he saw "a fellow throw a brick through the window"; and that this man was the defendant.

Frank O'Donnell, called by the defendant, testified that he was the father of Michael O'Donnell; that on September 21 or 22, 1942 he accompanied his son to the State's Attorney's office; that a detective took them there in a squad car; that Arnold Fee, the cook, rode in the car with them; that he did not talk to Fee in the car; that he did talk to Fee in the office of Mr. Napoli, an Assistant State's Attorney; that Mr. Napoli was there at the time and two detectives, Kennedy and Barnes, who were identified in the courtroom; that in the State's Attorney's office he heard Fee say that he "had no knowledge of what took place and that he could not identify the defendant George Henneman"; that later, in the car (evidently on the way home),

witness asked Fee, "Did you identify this fellow?" and that Fee said, "No."

Michael O'Donnell testified that he was in the State's Attorney's office with his father on the day following the occurrence, saw Fee there, and heard him say he "knew nothing of what happened"; that Fee was aiming his conversation at the elder O'Donnell; that witness did not hear the rest; and that Fee also said he could not identify George Henneman.

Despite the fact that O'Donnell and his father testified that Fee made these statements in the presence of an Assistant State's Attorney and Officers Kennedy and Barnes, who were present in court and heard the evidence, the People made no effort to refute their testimony. Although James Cappany, Mrs. James Cappany, Beulah Mischke, Michael O'Donnell, Olaf Anderson, Lieutenant George Barnes, and Gerhard Veith, also testified for the People, none of them attempted to identify defendant. Defendant denied the crime or participation in it.

Harold Carlson, Bernard Coyle, Mrs. Irma Coyle, Mrs. Gertrude Henneman (wife of the defendant), Arthur Lindquist, and Edward J. Loftus corroborated the testimony on behalf of defendant that he had been playing pool in an adjacent tavern and left there to meet his wife and Lindquist at the restaurant.

Mr. Cappany, owner of the restaurant, called by the People, testified that he was not present and that he was in bed at the time of the occurrence. Over defendant's objection he was permitted to testify as to a conversation with the witness O'Donnell and the witness Fee, and to a conversation with O'Donnell and a policeman outside the presence of defendant, and to the fact that the morning after the windows were broken he left the city and that when he got back the windows had been replaced.

Mrs. James Cappany, called by the People, testified, over objection, that in May 1942 a man by the name

of Joseph Casey had objected to her having painting done at the restaurant by some employees who were not connected with the painters' union.

Olaf H. Anderson testified for the State that Joe Casey called up on September 17th and that as a representative of the Normal Glass Company he went to the restaurant, found the broken windows, and had new glass installed by the Normal Glass Company, and that the value of the glass was $11.30.

Lieutenant George T. Barnes, called by the People, testified, over objection, that he knew the defendant to be a "Business Agent of Local 191 of the Painters' Union," and that he knew Joseph Casey to be a Business Agent of Local 184 of the Painters' Union, American Federation of Labor.

It appeared to be the theory of the State that the defendant, in conspiracy with others, including Casey, had conspired to deface the restaurant premises by reason of alleged labor trouble with Casey as Business Agent of Local 184 of the Painters' Union, by showing that Casey of Local 184 had repaired the damage. It is apparent that the hearsay testimony objected to and the testimony as to the replacing of the glass was admitted by the court on plaintiff's theory of an alleged conspiracy. When the *nolle prosequi* was entered as to the conspiracy count, the jury was left only with the charge of malicious mischief. There was no showing of any connection, intimacy, or knowledge, of Casey, of Local 184, with the defendant as Business Agent of another Local, namely, Local 191. The admission of this testimony was clearly prejudicial to the defendant and deprived him of a fair trial.

Defendant complains of the giving of the following instruction:

"If you believe from the evidence that any witness has wilfully sworn falsely to any material matter in this case, you may disregard the entire testimony of such witness, except in so far as it may be corrobo-

rated by other and credible evidence, or by facts and circumstances in evidence."

Defendant asserts that an instruction substantially in this language was condemned in *People v. Wells,* 380 Ill. 347, in *People v. Flynn,* 378 Ill. 351, in *People v. Johnson,* 317 Ill. 430, in *People v. Gardiner,* 303 Ill. 204, and in *People v. Ryan,* 349 Ill. 637. In the recent case of *People v. Langer,* 384 Ill. 608, the court discusses an instruction in the same language as the one complained of. The objection to that instruction was that it did not define the words any "material matter," and that the jury were permitted to determine the question of law as to what were material matters involved in the case. Our Supreme Court did not consider the giving of the instruction to be error and said:

"Other instructions given, particularly No. 5, defined every element material and necessary to constitute the crime with which plaintiff in error was charged. It was not necessary that the definition of the material matters involved in the cause should be contained in the challenged instruction. The instructions are to be considered as a series. When instruction No. 9 is read and considered with instruction No. 5, they meet all the requirements of the rule. The two instructions together define and set out, specifically, every material element necessary to constitute the crime charged, and every material element necessary to be proved in order to convict the defendant on such charge. This is the rule approved in *People v. Strutynski,* 367 Ill. 551."

Instruction No. 3, given for the People defines the crime and the material facts to be proved and when taken together with the instruction quoted sufficiently advised the jury of the facts material to the issues. We are of the opinion that the court did not err in giving the instructions.

Defendant urges that it was error to have admitted in evidence an alleged previous record of former conviction, for the reason that (a) there was no evidence to connect it with the defendant, (b) the purported record was more than 21 years old, (c) that the defendant was in no wise identified as the person previously convicted, (d) the alleged record was not only too remote in point of time but there was no showing that defendant was ever in Wisconsin where the alleged conviction is alleged to have occurred, and (e) the alleged record did not meet the requirements of the law. The record is a certified and exemplified copy of a conviction and sentence for burglary in November 1921 against one George Henneman, in the circuit court of Marathon county, Wisconsin. Defendant testified in his own behalf. He was not cross-examined. Thereupon the State offered the record. Defendant objected on the ground that there was no showing of the identity of the person named in the record with the defendant. Nevertheless the record was admitted.

In the case of *People v. Schanda,* 352 Ill. 36, it was contended that the court erred in admitting the record of conviction of a party of the same name as the defendant for larceny in the criminal court of Cook county. In disposing of the point the court said:

"Under the provisions of section 6 of division 8 of the Criminal Code it is permissible and proper to prove by the record that any witness in a criminal case has been theretofore convicted of an infamous crime, for the purpose of affecting his credibility. (*Bartholomew v. People,* 104 Ill. 601; *People v. Fisher,* 340 id. 216.) The only reason assigned by the defendant as to why the record of conviction was erroneously received in evidence is that there was no proof that the Frank Schanda named in that record was the defend-

ant Frank Schanda in this case. In *Clifford v. Pioneer Fire-Proofing Co.*, 232 Ill. 150, this court held that in a civil case the record of the conviction of a witness for an infamous crime was admissible to affect his credibility without evidence of the identity of the person convicted as the witness other than the identity of names, as such fact will be presumed if not denied. The same rule has been held to apply in a criminal case. (*People v. Lawson*, 331 Ill. 380.) The conviction for an infamous crime in either case is allowed to be shown for no other purpose than to affect the credibility of the witness. The record of such conviction of a defendant who voluntarily becomes a witness in a criminal case is not introduced, and cannot be considered, for the purpose of proving his guilt or innocence of the crime for which he is being tried but only for the purpose of discrediting him as a witness. Proof of such conviction need not, therefore, be made beyond a reasonable doubt before such evidence may be considered on the question of credibility."

Following the authority of *People v. Schanda*, the record of the conviction of "George Henneman" in the circuit court of Marathon county, Wisconsin in November 1921, of the crime of burglary was admissible without identifying him as being the same person as the defendant in the instant case if otherwise unobjectionable. The record does not show that there was any denial that the defendant was the same person as the one who was convicted in Wisconsin. The point made by the defendant was that there was a failure to identify him as the same person. The question remains as to whether the record of conviction was too remote. This record showed that one George Henneman was convicted on November 21, 1921. It was stipulated that at the time of the trial defendant was 39 years of age. Thus, defendant was 18 years of age at the time of the alleged previous conviction. In *Richards v. State*, 55 Tex. Crim. 278, the court held

that evidence of conviction of a witness 18 or 20 years before was inadmissible for the purpose of impeachment, the conviction being too remote; in *Shuster v. State,* 62 N. J. L. 521, the court held that reputation 18 years before the crime was too remote to be admitted as evidence of character; in *Burkhalter v. State,* 85 Tex. Crim. 282, the court held that evidence that the accused was given to fighting and was regarded as a "holy terror" 15 or 20 years before could not properly be admitted; and in *Linz v. Skinner,* 11 Tex. Civ. App. 512, it was held that the introduction, for the purpose of affecting the credibility of a witness, of an indictment returned 10 years before might be objected to as too remote.

In *People v. Willy,* 301 Ill. 307, our Supreme Court, in discussing character evidence, quoted with approval Greenleaf on Evidence (Vol. I, sec. 459, p. 533) : "The examination being governed and kept within bounds by the discretion of the judge, all inquiries into transactions of a remote date will, of course, be suppressed, for the interests of justice do not require that the errors of any man's life long since repented of and forgiven by the community should be recalled to remembrance and their memory be thereby perpetuated in judicial documents at the pleasure of any future litigant. The State has a deep interest in the inducements to reformation held out by the protecting veil which is thus cast over the past offenses of the penitent; but where the inquiry relates to transactions comparatively recent, bearing directly upon the present character and moral principles of the witness and therefore essential to the due estimation of his testimony by the jury, learned judges have of late been disposed to allow it." Our Supreme Court in the *Willy* case stated (320) "While it is true that the general rule is that much must be left to the discretion of the trial court in receiving and rejecting such evidence, this evidence of a bad reputation of the accused,

based on something that took place more than 10 years before, with no proofs to show its continuation, we think by the great weight of authority was too remote to be admitted, and the opinion as to his bad character based on such witnesses' knowledge was not properly admissible.''

While the case of *People v. Willy* did not involve a question as to the admissibility of the record of an infamous crime it did discuss the general subject of the admissibility of character testimony to affect the credibility of a witness.

Having surveyed the law bearing on this subject we are of the opinion that there was an abuse of discretion in the instant case in admitting the record of conviction of a crime 21 years previously when the defendant, if the one involved, was only 18 years of age. This was too remote under all the circumstances of the case.

Finally, defendant contends that the arguments of counsel for the State were not confined to the issue under Count II of the indictment. This is a valid complaint. The Assistant State's Attorney argued the evidence supporting the dismissed Count I. This tended to prejudice the defendant.

Because of the views expressed, the judgment of the criminal court of Cook county is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

*Judgment reversed and cause remanded with directions.*

Burke and Kiley, JJ., concur.