The People of the State of Illinois, Defendant in Error, v. John Mack Brown, Plaintiff in Error.

Gen. No. 65–120.

Second District.

April 14, 1966.

John T. Perry, of Wheaton, for appellant.

William V. Hopf, State's Attorney, and Edward Van de Houten, Jr., Assistant State's Attorney, both of Wheaton, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant, John Mack Brown, and George Adams were indicted by the grand jury of DuPage County and were charged in three counts, with burglary and larceny. The defendant was tried by a jury, found guilty of burglary, and was sentenced to imprisonment in the penitentiary for five to ten years. He hereby seeks to reverse this judgment and sentence.

The defendant, who was destitute and had known George Adams a short while, spent the night of March 11, 1960, with Adams at his home in Chicago. On Saturday morning, March 12, 1960, they walked Mrs. Adams and her baby to the bus station from whence she and the baby departed to visit relatives. Adams and the defendant then stopped at State and Harrison Streets where Adams sold $14 worth of vouchers for $4, and gave $2 to the defendant. From this point, the testimony of the defendant and Adams conflicts, and a resume of each version will be recited.

The defendant testified that he and Adams ate at the Ritz Hotel at about 2:30 p. m., then went to an employment agency on South Dearborn Street; that it was closed, but the janitor of the building admitted them into the bathroom where they drank some wine until requested to leave; that Adams borrowed a car and driver's license from his cousin, Joe Smith, for the purpose of going to Harper's on Kedzie Avenue and 15th Street to get some coal out of an apartment house; that the defendant and Adams then went to a bar and had more to drink; that the defendant then told Adams that he would meet him at Harper's at about 8:00 p. m.; and that the defendant went to the south side by bus and then came back to Harper's.

He further testified that he met Adams at a nearby bar about 8:00 p. m.; that Adams asked him to go for a drive; that when he got into the car he observed some boxes; that after driving awhile, they were stopped by a motorcycle police officer who asked them to pull over to the curb for failure to have a vehicle sticker; that when the police officer directed them to pull over, the defendant told Adams, "I ain't in this mess," got out of the car and walked away; and that the defendant was apprehended on Wednesday, March 16, 1960, at the parking lot where Joe Smith worked.

214

Adams testified that he and the defendant borrowed a car from his cousin, Joe Smith, at about 3:00 p. m.; that instead of getting coal, they went to a bar, bought some wine and drank in the car; that he was unemployed and told the defendant that he was going to Addison to find a factory where he had formerly been employed; that they arrived in Addison about 4:00 p. m. and failed to find the factory; and that they then drove around looking for work, but without stopping to make any inquiries concerning a job.

Adams further testified that he drove into a school yard and the defendant got out to look for a janitor to get the address of a restaurant where they could possibly get a weekend job; that the defendant could find no one and then entered the school house and started carrying out articles which he placed in the trunk and back seat of the car; that they then drove back to Chicago where they were stopped by a motorcycle police officer; that the defendant got out of the car and walked away as Adams pulled to the curb; that Adams was directed to follow the officer to the police station, but instead, evaded the officer and went to Joe Smith's house and related the incident to him; that Smith asked Adams to go to the police station with him, and that they were apprehended while en route to the station.

There is no controversy over the fact that the school house in Addison was burglarized; that numerous items—including three typewriters, a duplicating machine and a projector—of the approximate value of $2,000, were taken, carried away, identified, and later recovered in the Joe Smith car. Adams, an accomplice, testified that the defendant entered the school house, took the items in question from the school and placed them in the car. The defendant denied any connection with the crime and contended that his only knowledge of the stolen property was that he observed it when he entered the car about 8:00 p. m.

The issues in controversy are whether it was proven beyond a reasonable doubt that the defendant participated in the crime charged in the indictment; whether the trial court erred in admitting in evidence certified copies of the record of the defendant's prior convictions of infamous crimes; and whether the court erred in giving People's instruction 16, which reads:

> "The court instructs you that, where a larceny of goods and chattels is committed, at the time and place a burglary was committed, the possession by any person of such stolen goods and chattels shortly after the crime was committed tends to prove that the property was stolen by the person in whose possession it was found, and also prima facie evidence of a participation in the burglary as well as in the larceny. Those facts themselves, if you believe from the evidence, beyond a reasonable doubt, they are the facts, will authorize a verdict of guilty of burglary, unless the evidence in the case or the surrounding circumstances are such as to raise a reasonable doubt of such guilt."

The jury indicated by its verdict that it was satisfied beyond a reasonable doubt by the testimony of the accomplice, Adams, as corroborated by other witnesses and exhibits, that the defendant was guilty. It was only on the issue of participation in the crime that Adams' testimony was without direct corroboration of other witnesses, and was denied by the defendant. Adams did not see the defendant break into and enter the school house, but he did see him carry the items in question to and place them in the car. Other witnesses established the breaking and entering into the school house; that the articles taken were those subsequently found in Smith's car; and that Adams and the defendant were in said car when it was first stopped by the motorcycle police officer.

■ We recognize that the testimony of an accomplice is attended by infirmities, which require caution in relying on it alone. Nevertheless, a conviction may be based on such testimony, if it is of such character as to convince the jury beyond a reasonable doubt as to the guilt of the accused. Such considerations go to the weight of the evidence and the credibility of the witnesses. The People v. Hansen, 28 Ill2d 322, 332, 192 NE2d 359 (1963); People v. Nicholson, 55 Ill App2d 361, 368, 204 NE2d 482 (2nd Dist 1965).

The defendant's testimony was incredible in part: In sum it was that Adams and the defendant spent Friday night, and Saturday morning and afternoon together, eating and drinking, yet about 4:00 p. m., they voluntarily separated briefly and Adams drove to Addison alone, broke into a school house and carried bulky and heavy articles from the building to the car, and then drove back to Chicago to pick up the defendant—his companion; and that when the defendant entered the car after the interim of separation, he saw typewriters, projectors, etc., in the possession of Adams, who, to defendant's knowledge, had been unemployed and was practically without funds, but the defendant asked no questions concerning Adams' sudden acquisition of this property. Reasonable men and women, acting as jurors, could hear, yet not believe such testimony.

■ Another circumstance which the jury may have considered in arriving at its verdict was the defendant's flight from the car when the police officer directed Adams to park at the curb because of failure to display a vehicle sticker on the car. Absent knowledge of the crime of burglary, there was little or no reason for the defendant to flee since Adams had borrowed the car, as well as the driver's license. While flight does not raise a legal presumption of guilt, it is a circumstance which may be considered by the jury in connection with all

other evidence in the case as tending to prove guilt. The People v. Weber, 401 Ill 584, 603, 83 NE2d 297 (1949).

 The jury saw and heard these witnesses and found the defendant guilty beyond a reasonable doubt. Under the circumstances of this case, we cannot say that such degree of proof was lacking. The People v. Todaro, 14 Ill2d 594, 602, 603, 153 NE2d 563 (1958). Also, "a conflict in the evidence does not establish a reasonable doubt, and a jury verdict based on credible and substantial evidence is not rendered reversible by the fact that there was other evidence in the case which might, if believed, have resulted in a different verdict." People v. Neukom, 16 Ill2d 340, 347, 158 NE2d 53 (1959).

 When this case was tried in 1960, paragraph 734 of Chapter 38 of Illinois Revised Statutes of 1959 pertinently provided:

> "No person shall be disqualified as a witness in any criminal case or proceeding by reason of . . . his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility: Provided, however, that a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

The defendant also argues that the trial court erred in admitting evidence of his prior convictions of infamous crimes because they were too remote in point of time. In support of this contention he cites People v. Henneman, 323 Ill App 124, 54 NE2d 745 (1st Dist 1944). In Henneman, the court held that it was error to admit into evidence the record of defendant's conviction 21 years previously, for a crime committed when he was 18 years of age.

Since the date of the opinion in Henneman, the Supreme Court has decided this question adversely to defendant in the case of The People v. Buford, 396 Ill 158, 71 NE2d 340 (1947). At page 162 the court stated:

"It is next contended that the record of prior conviction should not have been introduced because it was too remote in point of time, . . . . The introduction of such record of conviction for the purpose of affecting the credibility of a witness, or the defendant who has voluntarily testified, is provided for by statute. The statute fixes no limitation as to the time of such previous conviction. (Ill Rev Stats 1945, c 38, par 734, p 1271.) This contention cannot be sustained."

■ It is further charged by the defendant that the trial court erred in giving People's instruction 16 in that the instruction assumes the fact of possession of the articles stolen by the defendant. However, the instruction concluded with a savings clause with reference to such assumption, which provided:

"Those facts themselves, if you believe from the evidence, beyond a reasonable doubt, they are the facts, will authorize a verdict of guilty of burglary, unless the evidence in the case or the surrounding circumstances are such as to raise a reasonable doubt of such guilt."

While the instruction was not artfully drawn, we believe that when considered in its entirety, it did not assume the controverted fact of possession to be true. We find no reversible error in giving this instruction. Consequently, the judgment and sentence is affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.