STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. EDGAR HAWTHORNE, DEFENDANT-RESPONDENT.

Argued January 9, 1967—Decided March 27, 1967.

*Mr. Brendan T. Byrne,* County Prosecutor of Essex County, argued the cause for plaintiff-appellant (*Mr. Barry H. Evenchick,* Assistant Prosecutor, of counsel and on the brief).

*Mr. Mark F. Hughes, Jr.* argued the cause for defendant-respondent.

The opinion of the court was delivered by

FRANCIS, J. Defendant Hawthorne was indicted for atrocious assault and battery allegedly committed on January 31, 1965. Prior to trial he moved for an order barring the prosecutor from using, on cross-examination at the trial for purposes of attacking his credibility, three previous convictions of crime. The convictions sought to be excluded were: (1) February 1945, larceny of an automobile in Baltimore, Maryland, for which he received a one-year sentence, (2) November 1945, armed robbery in Essex County, New Jersey, for which the sentence was four to seven years in State Prison, (3) 1956, robbery in Bridgeport, Connecticut, where the sentence was four to ten years. (If the last sentence had been served fully, Hawthorne would not have been out of jail when the present offense was committed. How long he had been on the street in January 1965 does not appear. It seems likely, however, that he was on parole at the time. It may be noted also that had he not been released before the end of his term in Maryland, he would not have been in New Jersey to engage in the armed robbery here.) The trial court granted the motion and executed an order suppressing the evidence of the convictions. The reason assigned was that the convictions were too remote to permit their use by the State in cross-examining the defendant at the trial for impeachment purposes. *State v. Hawthorne,* 90 *N. J. Super.* 545 (*Cty. Ct.* 1966). The Appellate Division granted leave to appeal, but before argument there we certified the matter on our own motion.

I

In 1799 the Legislature adopted a statute providing that no person convicted of any one of certain enumerated crimes "shall, in any case, be admitted as a witness, unless he or she be first pardoned * * *" June 7, 1799, *Pat. L. p.* 401, *Revised Laws of New Jersey* 1820, *p.* 462. In 1871 this over-all disqualification was ameliorated. By *Chapter* 40 of

the *Laws of* 1871 it was directed that whenever such a previously convicted person was being tried upon an indictment, accusation or allegation of crime, he should be admitted as a witness, "if he shall offer himself as a witness" in his own behalf. A further revision applicable to civil and criminal actions took place in 1874 (*Revision* 1709–1877 *p.* 378; *Gen. Stats. N. J.* 1895, *p.* 1397). In substance that revision continues to exist as *N. J. S.* 2A:81–12, which controls the controversy now before us. It says:

"For the purpose of affecting the credibility of any witness * * * his conviction of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence. * * *"

When defendant's motion was made to suppress the evidence of his previous convictions of crime, the trial judge felt that the word "may" in the above-quoted portion of the statute (*i. e.,* the defendant's previous conviction of any crime "may be shown to affect his credibility") conferred on the courts discretionary power to admit or exclude such evidence. He then pointed out that under common law rules of evidence trial judges have authority to exclude proof if they find its probative value is substantially outweighed by the undue prejudice it will inflict upon the party against whom it is directed. (See Rule 4 of proposed rules of evidence, adopted by the Supreme Court on September 14, 1964, and awaiting action by the Legislature). Reasoning from these premises he concluded that the criminal convictions, the last one being about nine years prior to the criminal act pending trial, were too remote and therefore ought to be excluded at the trial because of their great potentiality for visiting a prejudice upon Hawthorne which would be greatly disproportionate to their probative value as an attack upon his credibility.

We cannot agree. In our judgment both the history of the statute and the context in which the word "may" appears refute the idea that the Legislature intended to invest the courts with discretion to admit or exclude evi-

dence of a defendant's previous convictions of crime. It must be remembered that in earlier days Hawthorne's' convictions would have disqualified him as a witness. Then the Legislature decided total disqualification was too harsh a sanction to add to the punishment prescribed and imposed upon the convict for his crime. In furtherance of that decision it directed that the convicted person should be admitted as a witness, if he chose to testify. But it added that if he did take the witness stand his previous conviction of crime "may" be shown for the purpose of affecting his credibility. In the context "may" connotes an authorization, a grant of permission to the parties to civil or criminal actions to show the witness's previous criminal conviction by testimonial examination or by production of the record. Plainly the option was intended to be given to the State and the defendant in a criminal case, and the plaintiff and defendant in a civil case. No time limit was imposed upon admissibility. There is simply the flat and unrestricted statement that the conviction of crime may be shown to affect credibility. The authorization represented a policy decision by the Legislature, and established, as a matter of law, the admissibility of a conviction without regard to time interval between the conviction and the person's appearance as a witness. Thus, the "may" in the statute does not bespeak a grant of permission or discretion to the trial judge to receive or reject the proof. On the contrary, the parties are invested with the option and if it is exercised the examination must be allowed or the record of conviction received when offered.

The trial judge cited *Luck v. United States,* 121 *U. S. App. D. C.* 151, 348 *F. 2d* 763 (*D. C. Cir.* 1965), in support of his view as to the import of the New Jersey statute. The District of Columbia code is substantially the same as ours, saying that the fact of a witness's conviction of crime "may be given in evidence to affect his credit as a witness." The Court of Appeals declared that the word "may" leaves room for the exercise of judicial discretion respecting the admis-

sibility of a prior conviction of a defendant. We consider that construction strained and not justified by the context of the statute.

Reference has been made to cases in Texas, Maryland and Illinois as supporting the contention that a person's previous conviction of crime, if considered too remote by the trial judge, may be declared inadmissible to affect credibility. See, *Perez v. State,* 141 *Tex. Cr. R.* 575, 150 *S. W. 2d* 402 (*Tex. Crim. App.* 1941), an 11-year old burglary conviction; *Dallas County Water Control & Improvement District v. Ingram,* 395 *S. W. 2d* 834 (*Tex. Ct. Civ. App.* 1965), 28-year old manslaughter conviction; *Travelers Insurance Co. v. Dunn,* 383 *S. W. 2d* 197 (*Tex. Ct. Civ. App.* 1964), nine-year old burglary conviction. It is true that the Texas courts exclude evidence of convictions if they are considered too remote. But the Texas statute which permits introduction of a criminal record for impeachment purposes does so in language far less broad than that of our own statute. For example, the Texas law provides that where a suspended sentence is set aside, or where the convicted criminal was placed on probation and the period of probation has expired, the underlying conviction is not admissible. *Vernon's Ann. Tex. Code Crim. Proc. art.* 38.29. These limitations bespeak a legislative policy qualitatively different from that expressed by the New Jersey lawmakers. The Maryland cases are not particularly significant. In *Burgess v. State,* 161 *Md.* 162, 155 *A.* 153, 75 *A. L. R.* 1471 (*Ct. App.* 1931), a five-year old simple assault conviction was excluded as not involving an infamous crime. Likewise in *Simond v. State,* 127 *Md.* 29, 95 *A.* 1073 (*Ct. App.* 1915), proof of a 10-year old drunkenness conviction was rejected. But not cited by Hawthorne is *Cousins v. State,* 230 *Md.* 2, 185 *A. 2d* 488 (1962), where previous convictions of murder and robbery, 39 years earlier, and larceny, 26 years earlier, were declared admissible to affect credibility. The Maryland Court of Appeals, after pointing out that the statute (like ours) fixed no time limit on admissibility, said the convictions

were admissible "without reference to the time of [their] commission, for such bearing and weight on credibility as the trier of fact may give [them] under the circumstances." 185 *A. 2d,* at *p.* 489. The Illinois case cited by defendant, *People v. Henneman,* 323 *Ill. App.* 124, 54 *N. E. 2d* 745 (*App. Ct.* 1944), is of little weight at present on the issue now before us. Three years after *Henneman* the question was presented in *People v. Buford,* 396 *Ill.* 158, 71 *N. E. 2d* 340 (1947). In that case error was charged in the introduction, over defendant's objection, of his previous conviction of crime on the ground that it was too remote. In upholding the admissibility of the conviction the Supreme Court said:

"The introduction of such record of conviction for the purpose of affecting the credibility of a witness, or the defendant who has voluntarily testified, is provided for by statute. That statute fixes no limitation as to the time of such previous conviction. (Ill. Rev. Stat. 1945, chap. 38, par. 734, p. 1271.) This contention cannot be sustained."

It should be noted that the Illinois statute is substantially the same as ours. See also, *People v. Brown,* 69 *Ill. App. 2d* 212, 215 *N. E. 2d* 812 (*App. Ct.* 1966).

Despite the many cases in our reports sustaining the cross-examination of a witness or a defendant in a criminal case about his previous conviction of crime, no case has been cited to us, and we are unaware of any, where the question of remoteness of the conviction has been raised or ruled upon. Recognition of the long-standing and unqualified language of the statute—not any lack of ingenuity on the part of our bar—undoubtedly presents the reason for this. In fact, the opinions of the appellate courts in discussing such proof in the context of a particular case rarely refer, except perhaps in passing, to the date of the earlier conviction of the witness. For example, see *State v. Rodia,* 132 *N. J. L.* 199 (*E. & A.* 1944), defendant's 15-year old conviction; *State v. Arnwine,* 67 *N. J. Super.* 483, 485 (*App. Div.* 1961), convictions going back at least 20 years. More-

over, in *State v. Tansimore,* 3 *N. J.* 516, 532 (1950), defendant's conviction of murder 27 years earlier than the homicide for which he was being tried was admitted, even though he had received a pardon 14 years before the second killing. This Court held that the first conviction was properly received for impeachment purposes, under the statute, saying:

"There are no exceptions recited here and it cannot reasonably be asserted the Legislature intended the statute should become inoperative where a pardon was granted as no such provision is contained therein."

That a pardon does not render proof of the conviction inadmissible to affect credibility seems to be the generally accepted rule. 3 *Wigmore, Evidence* (*3d ed.* 1940) § 980 *p.* 543, *Supp.* 1964 *p.* 201; and see, *State v. Henson,* 66 *N. J. L.* 601, 610 (*E. & A.* 1901), dissenting opinion. At this point one might well ask: If a pardon does not stand in the way of the statutory direction that conviction of crime may be shown for purposes of impeachment, how can it be said that mere passage of time will nullify the legislative will? (If the pardon were granted because the executive was satisfied of the innocence of the person convicted, justice would seem to render the statute inapplicable. In fact, there has been considerable agitation for change of the *Tansimore* rule. But those problems are not before us now.)

Further support for the view that the Legislature did not intend to impose a time limitation, or to authorize a court in its discretion to impose such a limitation, on the right granted to prove a witness's previous conviction of crime is disclosed by *N. J. S.* 2A:164–28. This statute had its origin in *Chapter* 345 of the *Laws of* 1931. Under that act a person who received a *suspended sentence* after conviction of any crime, and who had no further conviction of crime for 20 years thereafter, was given permission to file a petition in the court where the conviction had been entered, praying that the record thereof be expunged and that he

be relieved "from such disabilities as may have * * * existed by reason thereof." If the court upon hearing, after notice to the prosecutor, found no reason to the contrary it was authorized to enter an order directing expungement of all evidence of conviction, and reciting that the petitioner be "forthwith thereafter relieved from such disabilities as may have heretofore existed by reason thereof." The broad sweep of the statute undoubtedly was called to the attention of the Legislature, because an amendment was adopted in 1936. It continued the provision for suspended sentence and added cases where a fine of no more than $500 was imposed (subsequently increased to $1000. See *N. J. S.* 2A:164–28). The interval between conviction and filing of the petition for expungement was reduced to 10 years and notice was required to be given to the chief of police or executive head of the police department in the municipality where the crime was committed. Then if no reason appeared to the contrary, the court was empowered to grant the order. An important qualification was added, however. Authority was withdrawn to expunge the record of the following crimes, even where sentence was suspended or the $500 (now $1000) fine was not exceeded: "treason, misprison of treason, anarchy, hostility to government [later excluded], all capital cases, perjury, carrying concealed weapons or weapons of any deadly nature or type, rape, seduction, aiding, assisting or concealing persons accused of high misdemeanors, or aiding the escape of inmates of prisons, embracery, arson, robbery or burglary." *Chapter* 174, *L.* 1936, §§ 1, 2. Although the statute in its present form is not applicable here, it does have some relevance to our problem. It shows that the Legislature is aware of the disabilities that follow in the wake of conviction of crime. It indicates a willingness to relieve a person convicted of crimes not enumerated in the exception of the disabilities consequent upon the conviction, providing he had received no more than the specified sentence and for the ensuing 10 years had led a life of rectitude. (Although the question is not before us,

it is reasonable to suppose that an order expunging the record in a case within the statute would relieve the convicted person from being subject to proof of the conviction to affect his credibility whenever he appeared as a witness). But the original and, particularly, the amended statutes reveal a purpose to continue the disabilities consequent upon conviction of the listed crimes and all others as well unless, as to the others, the sentence thereon was suspended or the specified fine not exceeded.

We are satisfied that the Legislature in enacting the 1874 statute, which is critically involved in this case, and continuing it through the various revisions down to the present time, did not intend to impose a time limitation on the admissibility of previous convictions of crime when offered for impeachment purposes. In light of the history, the intention was to admit the proof regardless of the age of the conviction. The 1874 act was drawn by Chief Justice Beasley and Justice Depue (who were members of the Supreme Court at the time) and Mr. Cortlandt Parker, an eminent member of the bar. *State v. Henson, supra,* 66 *N. J. L.,* at *p.* 605. If lapse of time between previous criminal conviction and the trial at which the convicted person appeared as a witness was to be a barrier against admissibility, certainly these legal scholars would have so provided. Absence of any such limitation reveals a desire to permit the whole matter to be submitted to the common sense of a jury for evaluation of the effect, if any, on the person's credibility. In *Henson,* speaking of the statute, Justice Van Syckel said:

"The act of 1874 does not submit to the court, as a question of law, whether the crimes charged should affect credibility; it is a question for the jury, whose province alone it is to say to what extent, if any, credibility shall be affected." 66 *N. J. L.,* at *p.* 606

Under all the circumstances we hold the view that previous conviction of crime of a witness, whatever its age, may be shown to affect credibility. That we deem to be the

legislative will, and if we overstate it, we assume the matter will be given appropriate consideration by the Legislature. In the present state of the law the effect on credibility of a "remote" conviction must be left to the judgment of the 12 jurors. The line of demarcation between remoteness and sufficient proximity depends upon many factors, only one of which is time. From a practical standpoint, where considerable time has elapsed between the conviction and the witness's appearance, a party may hesitate to offer the proof for fear of an adverse reaction by the jury. But in the present state of the law the gamble is his to take, under adequate instructions by the court to the jury. In proper cases where the element of remoteness is involved, the trial judge in his charge should in fairness call attention to the fact, and caution the jurors against giving the conviction any more weight in passing upon the witness's veracity than reasonable and sensible people ought to give to it.

From all the above, we conclude that the trial judge erred in holding he was vested with discretion to deprive the State of the opportunity, in advance of trial or otherwise, of showing defendant's three previous criminal convictions. We add also that, even if such discretion existed, defendant's recidivistic record should not have been excluded. His second offense was committed before the full term of the first sentence had expired. The next two crimes were more heinous than the first, and the full term of the third sentence had not run before the present alleged crime was committed. If one objective of sentence and parole is rehabilitation, it cannot be said that Hawthorne's record shows satisfactory achievement thereof.

## II

The practice engaged in here requires comment. A pretrial motion to suppress evidence of a witness's, particularly a defendant's, previous conviction of crime is not the type of "objection" which may be determined in advance of trial, within the contemplation of R. R. 3 :5–5 (b) (1). Nor

is it within R. R. 3:2A–6(a), dealing with suppression in advance of trial of evidence obtained through illegal search and seizure. Credibility of a defendant is a matter which can best, and perhaps only, be evaluated in the framework of the trial as the evidence has constructed it when the defendant or the witness takes the witness stand. Only then, in the great mass of cases, can the party having the option under the statute exercise an informed judgment whether to cross-examine or otherwise prove the previous criminal record.[1]

This is not to say that under no circumstances can pretrial motions to exclude evidence be made, or that in some situations evidence problems cannot be settled at the pretrial conference. Obviously there is an area in which the judge's discretion may operate. See, R. R. 4:29–1(b)(7); R. R. 3:5–3; *State v. Flett,* 234 *Or.* 124, 380 *P. 2d* 634, 94 *A. L. R. 2d* 1082 (*Sup. Ct.* 1963); Annotation, "Prejudicial

---

[1] When this Court was studying revision of the rules of evidence, serious consideration was being given to a proposed abandonment of the rule permitting proof of previous conviction of crime to affect credibility. *Cf. State v. Driver,* 38 *N. J.* 255, 292 (1962); *State v. Holley,* 34 *N. J.* 9, 14 (1961), *certiorari* denied 368 *U. S.* 854, 82 *S. Ct.* 89, 7 *L. Ed. 2d* 51 (1961). The suggestion was based on the claim frequently heard that defendants in criminal cases fail to take the witness stand because of fear of cross-examination concerning their previous records. There was considerable merit in the idea of changing the rule if as a result defendants would be induced to testify at their trials. When the matter was being discussed, it was proper in New Jersey for the judge in his charge and for the prosecutor in summation to comment on the defendant's failure to become a witness. It was felt that abrogation of the right to prove convictions on cross-examination, plus existence of the right of comment on failure of a defendant to testify, might persuade him to take the witness stand, and thus the public interest would be served. See, *State v. Brown,* 41 *N. J.* 590, 592 (1964). Before the final evidence code was adopted by us and submitted to the Legislature for approval, the United States Supreme Court banned such comment as violative of the Fifth Amendment. *Malloy v. Hogan,* 378 *U. S.* 1, 84 *S. Ct.* 1489, 12 *L. Ed. 2d* 653 (1964). *Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965). A substantial part of the inducement to testify having been removed, the suggestion to experiment with the proposed change in the rule was withdrawn.

Evidence—Pretrial Motion" 94 *A. L. R. 2d* 1087 (1964). An effort to categorize instances which might justify pretrial rulings on matters of evidence is not called for by this case. It is sufficient to say now that great caution should be exercised to avoid fractionizing trials and risking interlocutory appeals. It should be remembered also that most evidence problems are best and most expeditiously settled in the atmosphere and context of the trial. To illustrate: Either just before the defendant is called to testify or after his direct examination, defense counsel at side bar may suggest to the court that he would like to inquire of the prosecutor if the defendant is to be cross-examined about a particular matter considered incompetent or irrelevant and probably prejudicial if questions are put about it in the presence of the jury—even if the objections then made are sustained; if so, he may request that the jury be excused while the issue is argued and decided. This is not uncommon practice in our courts; experienced trial counsel have been engaging in it for years. Such procedure does not interfere with the cohesiveness of the trial, and in our judgment, represents the ordinary and desirable practice.

Reversed and remanded for trial.

WEINTRAUB, C. J. (concurring). I join in the opinion of Mr. Justice Francis and add some remarks in support of it.

Under our statute, *N. J. S.* 2A:81–12, the credibility of a witness may be questioned by proof of conviction of any crime. The statute does not contain a limitation based upon the age of the conviction, and in the nature of the subject, the omission must be deemed to be deliberate rather than an oversight, especially since the Legislature elsewhere dealt expressly with expungement of convictions after the expiration of a specified period of time (10 years). *N. J. S.* 2A:164–28.

As Mr. Justice Francis points out, the statute with which we are here concerned, *N. J. S.* 2A:81–12, cannot be read to

say expressly that a conviction may be proved only in a trial judge's discretion. If the statute could be so read, the judge's consideration would not be limited to the age of the judgment, but rather would embrace any factor one could reasonably contend should bear upon admissibility. That is the reach of *Luck v. United States,* 121 *U. S. App. D. C.* 151, 348 *F. 2d* 763 (*D. C. Cir.* 1965). Our statute has never been thought thus to leave the subject with the trial judge.

The question then is whether, notwithstanding the absolute phrasing of the statute, we should subject it to a time limitation which will fluctuate upon some indefinable basis in the "discretion" of each trial judge. I think to do so would probably conflict with the intent of the Legislature,[1] but that consideration aside, I see no utility in the proposal. I think it will induce a great deal of controversy with no perceptible gain.

The issue is not whether a conviction may be so old as to have no probative force whatever and hence be immaterial. Rather the proposition advanced is that notwithstanding the continued probative force of a conviction, a trial judge may exclude it because of some capacity for prejudice which supposedly becomes overriding with the passage of time. The concept we are asked to invoke is summarized in Rule 45 of the proposed *Uniform Rules of Evidence:*

"Except as in these rules otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

We are not concerned with (a) or (c), since obviously proof of conviction involves no undue consumption of time

---

[1] The Massachusetts statute, which initially read like ours, was amended to contain a time limitation. See *Commonwealth v. Cohen,* 234 *Mass.* 76, 125 *N. E.* 148 (*Sup. Jud. Ct.* 1919).

or element of surprise. Nor are we concerned with so much of (b) as speaks of confusion of issues or misleading the jury. We are concerned only with the danger of undue prejudice. We must therefore identify the "probative value" of the fact of conviction and then decide whether that "probative value" is "substantially outweighed by the risk of * * * substantial danger of prejudice."

N. J. S. 2A:81–12 embodies a widespread belief that conviction for crime has "probative value" with respect to the credibility of a witness. The possibility of prejudice inheres in the capacity of a conviction to affect the determination as to guilt, particularly if the conviction and the· indictment being tried are for the same type of offense. Actually it would not be irrational to admit proof of prior conviction upon the issue of guilt of a like crime. A prior conviction may well aid in the interpretation of circumstances. We know that a prior conviction is a legitimate fact in an inquiry into probable cause, and we know too that a good policeman will consider prior convictions in deciding who should be thought a possible suspect. Nonetheless, with respect to the trial itself, it is our policy to eliminate the fact of conviction from the inquiry into guilt and to limit the conviction to the question of the credibility of the accused or other witness.

We must start with the undeniable proposition that when the possibility of prejudice is greatest, it will not so overwhelm the probative value of the conviction as to warrant its exclusion. Specifically, if the conviction is fresh and is for the same species of crime involved in the trial and thus the capacity for prejudice is at its maximum, proof of the conviction will be received. That of course is the plain policy decision which underlies the statutory judgment that a conviction may be shown. In the words of Rule 45, the risk of undue prejudice does not substantially outweigh the probative value of the proof. *Stoelting v. Hauck,* 32 N. J. 87, 103–105 (1960).

Yet it is claimed that somehow the passage of time upsets the scale. I agree that time diminishes the probative value of a conviction, but I think it equally clear that time also reduces the risk of prejudice. I find it hard to believe that a conviction a juror finds too old to bear upon credibility will still be young enough to seduce him upon the issue of guilt.

In any event, I think the slender possibility of prejudice is outweighed by the inutility of a rule committing the subject to the "discretion" of a trial judge. The factors that would come into play are many. There is the age of the offense, the age of the offender, and the sentence imposed. The nature of the offense would be pertinent, and similarity with the subject matter of the trial could complicate that consideration. Next, there could be an inquiry into the intervening behavior of the accused. In jurisdictions which exclude a conviction because of remoteness in time, apparently consideration will be given to the accused's "conduct subsequent to the conviction." 98 *C. J. S. Witnesses* § 507(d), *p.* 413. Thus in *Pedorella v. Hoffman,* 91 *R. I.* 487, 165 *A. 2d* 721 (*Sup. Ct.* 1960), the court observed that "In the present instance, after considering the nature of the offense against the United States for which Hoffman was convicted *and his subsequent delinquency in observing his obligations under the federal revenue laws,* we do not think the trial justice abused his discretion" in overruling the objection (165 *A. 2d,* at *p.* 724; emphasis mine). But our practice does not permit a ranging inquiry into collateral misbehavior unless it is evidenced by conviction for crime, and indeed in part to avoid the very distraction and prejudice with which Rule 45 is concerned. In *Luck v. United States, supra,* 348 *F. 2d* 763, the court[2] suggested as relevant an additional factor which frankly I find quite elusive,

---

[2] *Luck* does not mention an earlier opinion of the same court which holds that age bears on weight and not on admissibility. *Murray v. United States,* 53 *App. D. C.* 119, 288 *F.* 1008, 1014 (*D. C. Cir.* 1923), *cert.* denied, 262 *U. S.* 757, 43 *S. Ct.* 703, 67 *L. Ed.* 1218 (1923).

saying the judge should weigh "above all, the extent to which it is more important to the search for truth *in a particular case* for the jury to hear the defendant's story than to know of a prior conviction." (348 *F. 2d, p.* 769; italics mine.) I would suppose that upon that approach the trial judge might be unable to make an evaluation until virtually the end of a trial, too late to aid the defendant who would like to know at the outset what to expect.

The discretionary approach must lead to irreconcilable results at the trial level, reflecting each judge's opinion of the statutory policy. It will also spawn a great deal of appellate controversy. The large number of reported opinions in Texas, where the discretionary rule obtains, suggests that prospect. See 70 *C. J., Witnesses,* § 1057, *p.* 854, *n.* 40; 98 *C. J. S. Witnesses* § 507 d, *pp.* 412–413. If that were the only fair way to deal with the problem, the disadvantages would be tolerable. But there is no convincing reason to take the subject from the jury. The jury is best situated to evaluate the conviction in the light of the entire trial record. If, as I have said, we leave the subject with the jury when the conviction is a recent one and the possibility of prejudice is therefore the greatest, we should not doubt . the jury's capacity to handle the subject when the likelihood of prejudice has itself receded with time.

Ultimately we come to an old topic—the ability of a jury to obey a cautionary instruction. Courts are ambivalent in their estimate of the intelligence of the layman, summoning one line of cases and then another to support the varying moods of their decisions. It seems to me that of the many situations in which a juror's capacity to obey a judge's charge might be debated, the situation before us is one in which we should have little trouble. Twelve laymen are as able as any of us to deal with the problem of an aging conviction. To this we should add, as Mr. Justice Francis points out, the restraint upon counsel which inheres in the danger of a boomerang if the conviction is of no value. I think it is better to permit the trial judge to exercise his

discretion by commenting upon the age of the conviction in his charge to the jury, than to invite debate as to whether a judge should or should not have barred a conviction from the case upon some unarticulated process of evaluation.

About a third of the jurisdictions have dealt with the problem, and they are about evenly divided. As to some which recognize a discretion to exclude, it is not clear whether, as in *Luck v. United States, supra*, 348 *F. 2d* 763, the whole subject of admissibility of convictions reposes in a judge's discretion, rather than only the matter of age. In others it is not clear whether the exclusion rests upon a finding that the conviction was so old that it had no probative force rather than upon a finding that a continuing probative value was outweighed by the danger of prejudice. Surely there is no trend toward the approach we are rejecting.

JACOBS, J. (concurring in result). In *Stoelting v. Hauck*, 32 *N. J.* 87, 103 (1960), Justice Proctor pointed to the historic discretion of trial judges "to exclude remotely relevant evidence whose probative value is offset by the danger of undue prejudice." See also *DiNizio v. Burzynski*, 81 *N. J. Super.* 267, 274 (*App. Div.* 1963) ; *Wimberly v. Paterson*, 75 *N. J. Super.* 584, 608 (*App. Div.*), *certif.* denied 38 *N. J.* 340 (1962) ; *Miller v. Trans Oil Co.*, 33 *N. J. Super.* 53, 59 (*App. Div.* 1954), affirmed 18 *N. J.* 407 (1955). The danger is most apparent when dealing with evidence of independent past criminality, for such evidence may well overwhelm the controverted issue of present guilt or innocence and the court's limiting instructions may well be viewed with skepticism. See *State v. Young*, 46 *N. J.* 152, 157 (1965) ; Note, "The Limiting Instruction—Its Effectiveness and Effect," 51 *Minn. L. Rev.* 264 (1966) ; Note, "Other Crimes Evidence at Trial: Of Balancing and Other Matters," 70 *Yale L. J.* 763 (1961) ; see also *United States ex rel. Scoleri v. Banmiller*, 310 *F. 2d* 720, 725 (3 *Cir.* 1962), *certiorari* denied *Banmiller v. Scoleri*, 374 *U. S.* 828, 10 *L. Ed. 2d* 1051

(1963); *Pinkney v. United States,* 124 *U. S. App. D. C.* 209, 363 *F. 2d* 696 *(D. C. Cir.* 1966).

The practice of admitting prior convictions for the stated purpose of affecting credibility has been persuasively criticized elsewhere. See *McCormick, Evidence* 93–94 (1954); 70 *Yale L. J., supra,* at *pp.* 774–778; Note, "Procedural Protections of the Criminal Defendant," 78 *Harv. L. Rev.* 426, 441 (1964); *cf. State v. Holley,* 34 *N. J.* 9, 14, *certiorari* denied 368 *U. S.* 854, 82 *S. Ct.* 89, 7 *L. Ed. 2d* 51 (1961); *State v. Brown,* 41 *N. J.* 590, 591–592, *certiorari* denied 377 *U. S.* 981, 84 *S. Ct.* 1888, 12 *L. Ed. 2d* 749 (1964). In our own State the subject has been dealt with by statute which, constitutional issues aside, must of course be given recognition. See *N. J. S.* 2A:81–12. But the statute does not purport to withdraw the traditional discretionary power of the judiciary to exclude remote and unduly prejudicial evidence and until today no court in our State has ever said that it has such effect. It appears to me that the majority construction unwisely places shackles on our trial judges in their conscientious efforts to insure fair trial and do justice and is not dictated either by the statutory language or its history. See *Luck v. United States,* 121 *U. S. App. D. C.* 151, 348 *F. 2d* 763, 767–768 *(D. C. Cir.* 1965); *Pedorella v. Hoffman,* 91 *R. I.* 487, 165 *A. 2d* 721, 724 (1960); see also *McCormick, supra,* at *p.* 91 where it is noted that while a pardon does not prevent the use of the conviction to impeach, "most courts hold that lapse of time may have this effect, and that a conviction too remote in time may be excluded by the judge if in his discretion he finds that under the circumstances it lacks probative value."

Both sections 1 and 3 of the 1874 revision may appropriately be referred to here. *Revision 1709–1877, p.* 378. Section 3 provided that no person shall be disqualified as a witness by reason of his interest as a party or otherwise, but such interest "may be shown" for the purpose of "affecting his or her credit." See *L.* 1859, *c.* 166. This section has been ap-

plied by trial courts (*Platner v. Ryan, Ex'r,* 76 *N. J. L.* 239, 241 (*Sup. Ct.* 1908)) but with continuing recognition of their discretionary powers. See *State v. Quinlan,* 86 *N. J. L.* 120, 131 (*Sup. Ct.* 1914), affirmed 87 *N. J. L.* 333 (*E. & A.* 1915); *DeVicenzo v. John Sommer Faucet Co.,* 87 *N. J. L.* 645, 647 (*E. & A.* 1915). Section 1 (*N. J. S.* 2A:81–12) provided that no person shall be excluded as a witness by reason of his having been convicted of crime but such conviction "may be shown" on cross examination for the purpose of "affecting his credit." This permissive language is similar to that contained in section 3 and should receive similar judicial treatment. See *Pedorella v. Hoffman, supra,* where the Rhode Island statute, comparable to ours, was held by the Rhode Island Supreme Court to leave the matter of remoteness "to the sound discretion of the trial justice subject to be reviewed by this court only for abuse of such discretion." 165 *A.* 2*d,* at *p.* 724.

In *Luck v. United States, supra,* the court flatly rejected the Government's contention that Section 305 of the District of Columbia Code, comparable to our statute, left no discretion to exclude evidence of a remote conviction; in the course of its opinion the Court of Appeals said:

"Section 305 is not written in mandatory terms. It says, in effect, that the conviction 'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field." 348 *F.* 2*d,* at *pp.* 767–768.

See *Barnes v. United States,* 124 *U. S. App. D. C.* 318, 365 *F. 2d* 509, 510, *n.* 1 (*D. C. Cir.* 1966); *Smith v. United States,* 123 *U. S. App. D. C.* 259, 359 *F. 2d* 243, 245 (*D. C. Cir.* 1966).

It seems unlikely that when the Legislature enacted the 1874 revision it had any notion at all of restricting the court's discretionary powers on matters of remoteness and the like. Surely its language contains no such intimation nor does its adoption of unrelated statutes such as *N. J. S.* 2A:164–28 which deals solely with the expungement of criminal records. It may be, as has been suggested, that while many criminal convictions have been admitted to attack credibility, this is the first instance where remoteness was raised by counsel or ruled upon at the trial level. See *State v. Hawthorne,* 90 *N. J. Super.* 545 (*Essex Cty. Ct.* 1966). But that sheds little light and merely serves to illustrate the greater present-day solicitude for the individual and his right to a trial which is fair and impartial. *Cf. State v. Young, supra,* 46 *N. J.* 152; *State v. Green,* 46 *N. J.* 192 (1965); *State v. Jackson,* 43 *N. J.* 148 (1964). That solicitude should be encouraged rather than discouraged and, if the interests of justice are to be truly served by the trial judge, room must be left "for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case." *Luck v. United States, supra,* 348 *F. 2d,* at *p.* 768.

Though all of the above leads me to dissent from Part I of the majority opinion, I subscribe generally to the procedural discussion in Part II and to the narrow holding that the lower court should not have suppressed the evidence before trial on the showing made before it. I therefore join in the reversal and remand.

Justice SCHETTINO agrees with the views expressed in this opinion.

JACOBS and SCHETTINO, JJ., concur in result.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.