Argued March 5, reversed and remanded April 10, 1963

# STATE OF OREGON *v.* FLETT

380 P. 2d 634

*David G. Frost* and *Mervin W. Brink,* Hillsboro, argued the cause and filed briefs for appellant.

*Francis W. Linklater,* District Attorney, Hillsboro, argued the cause for respondent. With him on the brief was Richard Smurthwaite, Deputy District Attorney, Hillsboro.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

GOODWIN, J.

Evelyn A. Flett was indicted for the crime of second-degree murder and was convicted of the included crime of manslaughter. She appeals.

The facts are obscure. There were no witnesses to the killing except the defendant. The state attempted to prove that the defendant purposely stabbed her husband with a paring knife. The defendant contended the killing was an accident. The state did not allege or attempt to prove premeditation.

The marriage was brief and turbulent. The evidence suggests that both parties drank excessively. The killing occurred during a quarrel. The state tried to persuade the jury that the quarrel was provoked by the defendant's behavior. She had spent two nights that week with another man. The defendant claimed the quarrel was more or less routine. She said the stabbing was an accident that occurred when the deceased pulled her hand, which held the knife, against his rib cage with fatal consequences.

■ We will assume that the state may use evidence of a defendant's recent marital infidelity in a proper case. Reversible error, however, entered this case when the court permitted the state, over the objection of the defendant, to put on the testimony of a neighbor woman who said that the defendant had told her several months before the killing that the defendant had spent the night in a motel with an unidentified man.

It is apparently the majority view in this country that a person charged with killing his or her spouse can be shown to have committed acts of marital infidelity. There are a great number of such cases, collected in 40 CJS 1160, Homicide § 229; 26 Am Jur 373, Homicide § 323; 2 Wigmore, Evidence 331, § 390 (3d ed,

1940). There are also cases which exclude remote acts of indiscretion. See, e.g., *State v. Knox,* 236 Iowa 499, 510, 18 NW2d 716 (1945) (3 years before); *Commonwealth v. Burke,* 339 Mass 521, 534, 159 NE2d 856, 864, 77 ALR2d 451 (1959) (7 months). Also excluded were isolated incidents held irrelevant in *Adams v. Commonwealth,* 274 Ky 714, 120 SW2d 237, 243 (1938); *Frasure v. Commonwealth,* 245 Ky 127, 53 SW2d 204 (1932); *People v. Harris,* 209 NY 70, 77, 102 NE 546 (1913).

■ We believe the controlling rule is found in our own recent case of *State v. Kristich,* 226 Or 240, 359 P2d 1106 (1961). When highly prejudicial evidence is offered, its relevancy, i.e., its tendency to prove an issue in dispute, must be weighed against the tendency of the offered evidence to produce passion and prejudice out of proportion to its probative value. The rule has been followed in later cases which have made it clear that the matter is largely within the sound discretion of the trial court. See, e.g., *State v. Freeman,* 232 Or 267, 374 P2d 453 (1962) (gruesome evidence held admissible).

The reason for permitting the state to prove acts of marital infidelity is the supposition that such evidence may have some slight probative value. In a first-degree murder case, which this is not, such evidence is thought to be relevant to prove motive. Where the killing is not alleged to be a premeditated affair, but where ill will toward the deceased spouse may be an issue, the evidence is thought to be relevant to prove ill will. In this case, ill will was an issue. However, the connection between isolated acts of marital infidelity and the purposeful slaying of a spouse is extremely tenuous in any case. Here the record reveals that excessive drinking and quarreling were

routine weekend activities. There is no evidence that the hostility, if any, of one spouse toward the other had anything to do with marital fidelity. Under these circumstances, while it may not have been an abuse of discretion to permit the state to show the misconduct that occurred a day or two before the killing, it was clearly an abuse of discretion to let the district attorney roam out over the countryside with his proof of remote acts of indiscretion that could have had nothing to do with the issues the jury was called upon to decide.

■ The record admits of no inference but that the district attorney was attempting to blacken the defendant's character by proof of collateral misconduct having so little to do with the crime as to be virtually irrelevant. We have recently held that a person accused of burglary cannot be shown to have negotiated the bank checks stolen in the burglary, because such conduct is a separate crime. *State v. Gardner*, 225 Or 376, 358 P2d 557 (1961). *A fortiori,* a person accused of stabbing her husband should not be called upon to explain to a jury what she was doing in an unidentified motel with an unidentified man several months earlier, unless the state is prepared to show some substantial connecting link between the two acts. As this court said in *State v. Rollo*, 221 Or 428, at 438, 351 P2d 422 (1960), "[t]he prosecutor is entitled to hit as hard as he can above, but not below, the belt." In the case at bar, the court permitted the prosecutor to overreach himself.

■ One of the remaining assignments of error presents a question the trial court again may be called upon to decide. During the trial, one Kizer was permitted to testify that he had spent the night with the defendant the Wednesday and Thursday just before

the killing. He was also permitted to testify that he had done so on "three or four; four or five, maybe" other occasions. The testimony concerning the "four or five" other occasions was objected to as remote and prejudicial. In the absence of some substantial connection between these episodes and the state's theory of the case, the evidence should have been excluded.

■■ Another assignment of error challenges the propriety of the trial court reinstructing the jury on the included crime of manslaughter at the jury's request the next day after the cause had been submitted. (The jury had rested from its labors during the intervening night.) The method of reinstructing a jury, at its request, on rules of law is provided for in ORS 17.-325. The advisability of reinstructing rests within the discretion of the trial court, subject to the statute. *State of Oregon v. Vaughn*, 200 Or 275, 265 P2d 249 (1954) and authorities cited therein. In the case at bar there was no abuse of discretion.

■■ Error has also been assigned to the refusal of the trial court to rule, prior to the commencement of the trial, that the state could not offer evidence of the defendant's marital indiscretions during the forthcoming trial. The assignment is without merit. There is no occasion, prior to trial, to seek test rulings from the trial court upon questions of the admissibility of oral evidence that may or may not be offered. *Cf.* ORS 141.150 for the suppression of evidence seized under a warrant, and *State v. Chinn*, 231 Or 259, 373 P2d 392 (1962), for the suppression of illegally seized evidence generally.

■ If the trial judge desires to have an informal conference with counsel prior to trial in order to minimize possible hazards that might lead to a mistrial,

or in other ways to expedite the taking of testimony, that is a matter of discretion with the individual judge. We have found no authority, however, which requires the court to submit to a dress rehearsal in which the defendant may explore the state's evidence and the court's rulings thereon out of the presence of the jury in preparation for the trial itself.

Because of the errors noticed above, the cause must be retried.

Reversed and remanded.