Argued December 1, 1975, reversed and remanded February 12, petition
for rehearing denied March 9, 1976

VANDERMEER, *Respondent,*

*v.*

PACIFIC NORTHWEST DEVELOPMENT
CORPORATION, *Appellant.*

545 P2d 868

*J. D. Bailey* of Schwenn, Bradley, Batchelor and Bailey, Hillsboro, argued the cause and filed briefs for appellant.

*Rita Radich,* Portland, argued the cause for respondent. With her on the briefs was John Toran, Jr., Portland.

HOLMAN, J.

**HOLMAN, J.**

This is an action for false imprisonment. Plaintiff received a judgment for general, special and punitive damages which was entered pursuant to a jury verdict. Defendant appeals.

The first issue is whether defendant's appeal was perfected within the time permitted by statute. Plaintiff contends defendant's motion for a judgment notwithstanding the verdict was not timely filed and, therefore, the motion did not delay the running of the 30 days within which to file a notice of appeal.[1] Within the ten days allowed in which to file a motion for a new trial, the trial court entered an order extending the time within which to file such a motion to October 22, 1974.[2] The trial judge found as facts that the motion for a new trial was mailed by defendant's attorney to the trial judge on October 21 with a request that it be filed; that the motion was received by the trial judge on October 22 and on that date delivered by him to his secretary-bailiff, who is also a deputy county clerk, with the request that it be set for hearing; and that the deputy clerk did not physically file the motion in the county clerk's office.[3]

██ ██ From these facts the trial judge concluded that his delivery of the motion to the deputy clerk constituted

[1] ORS 19.026 Time for service and filing of notice of appeal. "(1) Except as provided in subsections (2) and (3) of this section, the notice of appeal shall be served and filed within 30 days after the entry of the judgment appealed from.

"(2) Where any party has served and filed a motion for a new trial or a motion for judgment notwithstanding the verdict, the notice of appeal of any party shall be served and filed within 30 days from the earlier of the following dates:

"(a) The date of entry of the order.disposing of the motion.

"(b) The date on which the motion is deemed denied, as provided in ORS 17.615.

"* * * * *."

[2] See ORS 17.615.

[3] In Multnomah County the officer with whom papers are filed is no longer the county clerk but, rather, the Director of the Department of Judicial Administration.

filing in accordance with the requirements of the law and, therefore, the motion had been filed within the time allowed by the court. It is our opinion that there was sufficient evidence to justify the factual findings made by the trial court as well as a sufficient basis for its legal conclusion that the delivery of the motion by the judge to the deputy clerk constituted a filing of the motion. In *Charco, Inc. v. Cohn,* 242 Or 566, 569, 411 P2d 264 (1966), we held that the delivery by a judge of an order to a deputy clerk for filing was in legal effect a filing of the document without regard to whether it was physically filed. In the present case when the judge delivered the motion to the deputy clerk, he told her to set it down for hearing and said nothing about filing it. However, we do not believe this distinction should change the result since a motion should be filed prior to hearing (as any deputy clerk should know), and a request for filing is implied anytime a document is delivered by a judge to a deputy clerk to be set for hearing.

It is also contended the trial court was without authority to hear the motion because defendant did not comply with the rules of court adopted for the Fourth Judicial District. These rules require that, in addition to filing the motion, a copy of it be served upon the trial judge and opposing counsel and such service be endorsed on the motion. Service was made upon opposing counsel by mail and endorsed upon the motion. However, the motion, rather than a copy thereof, was mailed to the judge. No copy was included nor was there any endorsement of service on the judge upon the motion. The trial court reasoned that no injury resulted to plaintiff due to the technical non-compliance with the rule and held that the defect would not deprive the court from ruling on the motion under such circumstances.

Plaintiff quotes language from *Coyote G. & S. M. Co. v. Ruble, et al.,* 9 Or 121 (1881) to the effect that court rules have the force of law and the trial judge does not have the discretion to dispense with rules pro-

mulgated by the local courts. Assuming that such rules have the force of law, it does not follow that non-compliance with each technical aspect of a rule is fatal where the purpose of the rule has been substantially fulfilled.

## ON THE MERITS

Defendant operated an apartment complex and plaintiff was one of its tenants under a written agreement which either party could terminate by 30 days' written notice. Plaintiff's household was composed of her husband and two children. Defendant furnished for the use of its tenants a swimming pool, a recreation room, and a laundry room. Prior to the occurrence which is the subject of the present litigation, defendant had experienced difficulty with loud parties in and damage to the recreation room and its lavatory. As a result, defendant decided to close the recreation room at 10 p.m. each day. Previously it had been open on a 24-hour-a-day basis. Each tenant's apartment key also opened the recreation room. Plaintiff testified that when she rented the apartment she was told that the facilities would be open on a 24-hour-a-day basis.

On Friday, August 24, shortly after 10 p.m., a representative of defendant, acting pursuant to authority from defendant, appeared at the recreation room and announced that the room must be cleared because it was going to be closed. The room was then being occupied by 20 to 30 people who were relaxing in different ways. Plaintiff, who was present with her husband, was shooting a game of pool. A heated argument resulted between various tenants, including plaintiff, and defendant's representative. The tenants were contending that under their tenancy they had a right to continue using the recreation room.

The written tenancy agreement between plaintiff and defendant covered her apartment and its appurtenances. It provided that the tenant must comply with all of defendant's rules and regulations which were posted in each apartment. No notice of the closing time

[ 225 ]

of the recreation room had been sent to the tenants or posted in their apartments. Defendant claimed to have posted a notice that day in the recreation room concerning the 10 o'clock closing time, but many people, including plaintiff, testified they saw no such notice. There was testimony that it had been ripped down.

The heated argument lasted for a considerable period of time during which defendant's representative radioed two or three more of defendant's employees for assistance and also called the police. There was testimony that during the argument, defendant's representative made remarks to various tenants and to the assembled persons, such as, "I can have your car stripped in ten minutes," "If you don't leave you will be evicted," and "If you don't leave I will call the paddy wagon." There was also evidence that when defendant's representative appeared on the scene and announced that the recreation room would be closed, plaintiff asked him who he was and received the answer, "That's none of your damned business." When asked by plaintiff if he thought his course of action would repair the damage to the premises, which was the basis for closing the room, defendant's representative was reputed to have said, "I don't give a damn what you think, lady." He also went over to where plaintiff was playing pool and picked up the pool balls so the game could not be continued.

Police officers appeared at the scene but refused to arrest anyone because the tenants were on private property and the police had no knowledge of the right of those present to be there. However, the police informed defendant's representative how to make a citizen's arrest and told him they could take to jail anyone so arrested. Defendant's representative thereupon announced that anyone who did not leave would be arrested. Plaintiff, and a Mr. Holloway and a Mr. Crampton, refused to leave, were put under a citizen's arrest by defendant's representative for trespass, and were taken to jail by the police. Plaintiff remained in jail about two hours until she was released upon her

own recognizance. No criminal charge was ever filed against her.

■ Defendant initially contends the trial court erroneously instructed the jury that the landlord's right to control the recreation room was limited by an obligation to its tenants to make only reasonable rules and reasonable changes in them and to give reasonable notice of such changes. The instructions were as follows:

"* * * As used in this lease, the word appurtenances in this case means the use and enjoyment of the halls, drives, and passages especial to the use and enjoyment of the leased premises, and the privilege of non-exclusive use of the additional facilities provided by the apartment complex for its tenants, including the playground, swimming pool and recreation room. Plaintiff was, therefore, privileged to use the recreation room.

"The landlord was entitled to make reasonable rules concerning the use of the recreation room for the safety and convenience of the tenants and for the physical protection of the property and was entitled to make reasonable changes in those rules. The plaintiff as a tenant was entitled to have reasonable notice of such rules or change of rules, and reasonable notice of the consequences of failure to observe them. What constituted reasonable rules and regulations and what constituted reasonable notice concerning them are questions of fact for you to determine.

"Notice of a rule or change of rules must have been given by a person whom tenants and in particular, the plaintiff, would reasonably understand had authority to represent defendant's management for the purpose of giving notice of such rules.

"If you find that it was a reasonable rule for defendant to close the recreation room at 10:00 P.M. on the night of August 24, 1973, and further find that plaintiff was given reasonable notice of the establishment of that rule by a person she had reason to know had authority to issue such a rule under all the circumstances, then plaintiff would not be entitled to lawfully remain in the recreation room after being given reasonable notice that it had been closed because her privilege to use it at that time would have ceased.

"On the other hand, if you find it was not reasonable for defendant to close the recreation room at 10:00 P.M. or that plaintiff was not given reasonable notice of the establishment of the rule by a person she had reason to know had authority to issue such rule under all the circumstances, then plaintiff would be lawfully entitled to exercise her privilege to remain in the recreation room."

Defendant argues that the recreation room was not an appurtenance, that plaintiff secured no legal interest in its use, and that the tenants had only a license to use it. It also claims that whether the license was revokable by the grantor was a matter of law for the court, not a jury question, and that defendant had as a matter of law the right to close the recreation room as it did.

Little is to be gained by a discussion of the technicalities of real property law relating to appurtenances, leaseholds and licenses because, in any event, plaintiff was entitled through her tenancy to the use of the recreation room subject to defendant's reasonable regulations. Defendant had no right to arrest plaintiff if it was acting unreasonably in restricting her use in the manner it did. The trial judge construed the rights of the parties under the tenancy agreement and came to the correct conclusion that defendant did have the right to make reasonable regulations for the room's use and to put them into effect in a reasonable manner. There was evidence from which it could be found that those duties were not fulfilled. Whether they were fulfilled was a question of fact and was properly left to the consideration of the jury who, necessarily, must have found that defendant had acted unreasonably.

Defendant also maintains that the issue of punitive damages should not have been submitted to the jury. There was evidence from which the jury could find that defendant's representative undertook in a particularly arbitrary manner, while extremely angry and with insufficient or no prior notice of any change

in the rules, to use the severe sanction of arrest and jail to immediately enforce defendant's asserted rights in what constituted a legitimate dispute of no great or immediate consequence. We believe the following language in *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306, 27 ALR3d 1268 (1967) is appropriate:

> "Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard by a member of the medical profession of his professional duties (preservation of life and health). * * * It is proper, however, in determining whether there has been a sufficiently aggravated violation of societal interests to justify the sanctions of punitive damages as a preventative measure, that any duty owed by the offending party be taken into consideration. This is so whether the offending person be a physician, lawyer, electrician, or any other person who may owe a duty by virtue of his relationship to the offended party."

There is evidence here of the kind of societally reprehensible conduct which exemplary damages are designed to deter. Probably the closest case factually in which punitive damages have been allowed is *Stroud v. Denny's Restaurant*, 271 Or 430, 532 P2d 790 (1975). In that case the plaintiff was a patron in defendant's restaurant and, in addition to other food, received an order of toast, the price of which was 25 cents, which the plaintiff claimed was not prepared as stated on the menu. He refused to pay for the toast, although he tendered payment for the balance of his bill. An argument ensued, the police were called and a citizen's arrest was made for defrauding an innkeeper. The evidence in both *Stroud* and the present case

permits a finding of aggravated overkill in the heat of anger concerning a matter of minor consequence in which defendant's position in the underlying dispute was found to be wrong.

■ Defendant claims the trial court erred in permitting plaintiff to introduce evidence that subsequent to plaintiff's arrest defendant attempted to evict plaintiff and her family and brought unsuccessful proceedings against her to accomplish this end. Defendant contends such proceedings were irrelevant to any issue in the case and that evidence of them was prejudicial. We conclude the evidence was material to the issue of punitive damages. There was evidence that defendant's representative repeatedly threatened eviction at the time of arrest. While defendant had a right to evict for no cause at all if it gave proper notice, defendant's resolve to carry through on the threats is probative of the existence of ill will and dislike at the time the threats were made. This evidence of ill will and dislike is relevant to the motivation which may have prompted such a severe sanction as arrest and jail for what would appear to be a relatively minor matter. It is therefore probative of malice, which is relevant to an award of punitive damages. In addition, the evidence tends to prove that defendant's representative did, in fact, make the threat as plaintiff's witnesses testified.

■ When evidence is offered to prove a fact in issue, its tendency to prove that fact must be weighed against its tendency to produce disproportionate inflammatory prejudicial passion and bias. *State v. Flett,* 234 Or 124, 380 P2d 634 (1963); *State v. Kristich,* 226 Or 240, 359 P2d 1106 (1961); McCormick on Evidence 439, § 185 (2d ed 1972). The rule is well stated in *Carter v. Moberly,* 263 Or 193, 200-01, 501 P2d 1276 (1972):

> "* * * Such an objection requires the trial judge to assess the probative value of the proffered evidence, and to weigh the probative value against various considerations which may militate against admissibility, such as undue prejudice, introduction of collateral issues, con-

sumption of undue time, or unfair surprise to the other party. McCormick on Evidence (2d ed 1972), 439-440, § 185. If he finds the evidence to have no probative value, he must exclude it. If, on the other hand, it does tend to establish a fact in issue, and no contrary considerations are present in the particular case, the evidence must be admitted. Between these two extremes, however, is an area in which further judgment must be exercised. If the evidence has some probative value, but also presents difficulties such as those mentioned above, the judge must determine whether the value of the evidence outweighs, or is outweighed by, the offsetting considerations. We sometimes call the exercise of this kind of judgment 'discretion.' Its exercise requires the judge to weigh the value of the evidence in light of all the circumstances of the particular case, and his conclusion, if it is reasonable, will not be disturbed on appeal. Precedent is of little value in reviewing such cases, because even when cases involve similar issues and similar types of evidence, the other factors which may properly influence the trial court's ruling are highly variable. We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether his ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer." (Footnote omitted.)

It is our opinion that the present testimony was within the permissible range for admission considering its probative value as compared with its possible prejudice.

■ Defendant also contends the trial court erred in admitting evidence which showed that the two persons arrested with plaintiff were also the subject of subsequent tenancy terminations. This evidence also tends to prove defendant's representative's state of mind at the time the arrests were made. All three were threatened at the same time and their arrests were virtually simultaneous. The evidence is less probative of defendant's attitude toward plaintiff because the action was not taken against plaintiff but against

third persons. Nevertheless, we believe the evidence is sufficiently probative of the mental attitude of defendant's representative toward all who stayed in the recreation room at the time the threats were made to bring its admissibility within the permissible discretion of the trial judge.

■ Defendant finally contends the trial court erred in admitting evidence that, subsequent to plaintiff's arrest, the manager of the apartment house signed a criminal complaint for harassment against Holloway. The manager was on vacation at the time of the arrests and he took no part of any kind in that occurrence. The charge of harassment arose out of a physical scuffle between the manager, Griggs, and Holloway outside the recreation room ten days after the arrest of plaintiff. The admitted evidence of that occurrence was as follows:

"Q After the events on the evening of August 24, 1973, did an employee of the defendant in this case cause a criminal action to be brought against you?

"A Yes, sir.

"Q Was the—Just tell the jury what the nature of that action was; just the nature of it.

"A Harrassment. [Sic.]

"Q All right. Tell the jury who it was that filed, or caused an action to be filed?

"A The resident manager, Richard Griggs."

Defendant cross-examined as follows:

"Q You were not the only defendant in that case, correct?

"A No, sir.

"Q Mr. Vandermeer was also a defendant, was that correct?

"A Yes, sir.

"Q And, the incident which is discussed in that criminal complaint is not the incident of the night of the 24th of August, is it?

"A No, sir.

"Q It's an incident that occurred when? The 4th of September?

"A    I don't know the exact date that it occurred, but it would be pretty close, I guess.

"Q    It's the 4th of September, right?

"A    Yes.

"Q    And, was that a time, the 4th of September, when there was a scuffle, physical scuffle in the recreation room involving you and Mr. Griggs?

"A    Not in the recreation room, no, sir.

"Q    It was outside the recreation room?

"A    Yes, it was.

"Q    And, occurred after you had been in the recreation room?

"A    Yes, sir."

The objection to the testimony was made prior to the taking of the evidence and out of the presence of the jury and was adequate to raise the issue of its relevancy.

The question of admissibility becomes more difficult as the connection between the evidence offered and the occasion which resulted in the arrest of plaintiff becomes more attenuated. When the apartment manager signs a complaint because of an assault allegedly suffered by himself at the hands of a third party and arising out of an occurrence other than the one which is the basis for the present case, it is difficult to conclude that such action shows malice towards plaintiff.

The trial judge realized the lack of relevance and originally ruled the evidence not admissible. However, he changed his mind and concluded defendant had made the testimony relevant by its prior, further cross-examination of Holloway. That cross-examination was:

"Q    Did you regard yourself as a troublemaker around the complex?

"A    No, I didn't.

"Q    Did other tenants around the complex regard you that way, to your knowledge?

"A    Are you talking about before or after [before or

after the occurrence of August 24 in which he was arrested with plaintiff]?

"Q   Well, say, after.

"A   I don't know for sure. I think that there were hard feelings. I had heard the comment made, but I paid no attention to it.

"Q   Did you feel that you were regarded as a troublemaker then?

"A   Well, myself, no, I didn't."

The following colloquy between the court and defense counsel demonstrates the court's reason for changing its mind:

"THE COURT: * * * You asked him about, in effect, about his reputation among his fellow tenants, but I think the action by Griggs in causing the criminal complaint to be filed could be explanation for his answer, and I think for that reason, I can't exclude it.

"MR. BAILEY: His answer was, 'No', as I recall.

"THE COURT: No, it was equivocal, 'Some people might or—'

"MR. BAILEY: What does that have to do with her case?

"THE COURT: It tends to create the impression among the jury, that he was simply a troublemaker. You asked him if he was thought—other people thought he was a troublemaker. Mr. Griggs filed an action against him. I presume the jury can infer from that, that that was a matter of knowledge.

"MR. BAILEY: But, that has to do with his damages, and the question of his being regarded afterwards as a troublemaker has to do with his damage, and not Mrs. Vandermeer.

"THE COURT: I'm just going to allow a limited question."

There was danger that the jury might draw the inference that the charge against Holloway was just one more example of defendant's malicious and unreasonable attitude and that if defendant was maliciously inclined toward Holloway it was also probably treating plaintiff in the same manner. The evidence was admitted by the court as an explanation of why

[ 234 ]

other tenants might think Holloway was a trouble-maker. However, it is difficult to see how evidence that a criminal complaint had been filed against Holloway would dispel any idea he was a trouble-maker. The evidence would seem to have the opposite tendency. People who have criminal complaints filed against them would more likely be considered trouble-makers than those who do not have such complaints filed against them. Before such evidence would tend to show he was not a troublemaker, there would have to be evidence permitting an inference that the charge was unfounded. However, the trial court refused to allow plaintiff to show that Holloway was not found guilty when the criminal case was tried, for the stated reason that the burden of proof is higher in criminal cases.

The foregoing complications illustrate the difficulties that are inherent in foraging too far in the field of attenuated inferences. The relevance was miniscule and the prejudice apparent. It is, therefore, our opinion that the discretionary area in which we will sustain a trial judge if he rules either way has been exceeded. The evidence should have been excluded and it was prejudicial error for it not to have been.

There are other assignments of error which are unnecessary to discuss because there is no indication that similar questions will necessarily occur upon retrial.

The judgment of the trial court is reversed and the case is remanded for a new trial.