Argued December 8, affirmed February 22, 1978

BYERS, *Respondent,*
*v.*
SANTIAM FORD, INC., *Appellant.*
(No. 47988, SC 25219)
574 P2d 1122

Jack A. Gardner, Eugene, argued the cause for appellant. On the briefs were Richard T. Kropp and Gregory L. Decker of Emmons, Kyle, Kropp & Kryger, Albany.

Thomas J. Reuter, Lebanon, argued the cause for respondent. On the brief was Lawrence Morley of Morley, Thomas & Kingsley, Lebanon.

Before Denecke, Chief Justice, Holman and Lent, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

Lent, J., specially concurring opinion.

**RICHARDSON, J.,** Pro Tempore.

Defendant appeals a jury verdict awarding general and punitive damages for fraud and violation of the Unfair Trade Practices Act (ORS 646.638) in the sale of an automobile. Defendant makes two assignments of error. First, it is urged the court gave contradictory instructions regarding the burden of proof necessary to establish common law fraud. Secondly, defendant assigns as error the exclusion from evidence of offers of compromise made after the complaint was filed.

The defendant is an automobile dealership engaged in the sale of new and used cars and in automobile repair. Defendant received a new Ford Pinto for sale late in 1975. This car was used by the daughters of defendant's president for their own transportation. During the time they were using it the car was involved in an accident. The damage was repaired in defendant's shop at a cost of approximately $3,000. The vehicle was then placed on the new car lot for sale with an odometer reading of 4,000 miles.

Plaintiff purchased the car in February 1976. It was represented to him as a new car which had been used as a demonstrator by the daughters of the corporation's president and that it had only the wear and tear incident to the mileage shown on the odometer. It was never disclosed to plaintiff that the car had been damaged in an accident and subsequently repaired.

Plaintiff made several complaints about the operation of the vehicle to defendant. He was never informed, during any of the times he made the several complaints, that the car had been in an accident. He ultimately learned, in June 1976 from a third party, that the vehicle had been damaged and repaired.

On July 1, 1976, plaintiff filed a complaint alleging a cause of action in two counts. Count one alleged common law fraud and count two alleged a violation of the Unfair Trade Practices Act. He sought general and punitive damages.

[ 413 ]

Sometime after the complaint was filed counsel for both parties entered into settlement negotiations. After several offers and counteroffers defendant proposed a settlement figure which was rejected by plaintiff and the matter proceeded to trial.

The jury returned a verdict in the form of answers to certain questions. Question one asked if the defendant was guilty of fraud in the sale of the automobile to plaintiff. The jury answered "yes." The second question asked if the defendant was guilty of wilfully committing an unfair trade practice. Again the jury answered "yes." The verdict form continued:

"* * * If your answer to questions 1 or 2 is yes, then answer questions 3 and 4."

Question three asked the amount of general damages and the jury answered this by inserting an amount. Question four asked if plaintiff was entitled to punitive damages, which the jury answered in the affirmative and then inserted an amount in response to question five.

■ In the first assignment of error, defendant claims the court gave contradictory instructions regarding plaintiff's burden of proving common law fraud. Assuming the challenged instructions were in error, the judgment can nevertheless be sustained on the basis of the jury's verdict in favor of plaintiff on count two, alleging violation of the Unfair Trade Practices Act.

This Act authorized a jury to award punitive damages for conduct in violation of its provisions. ORS 646.638. The jury was instructed it could award punitive damages based on a finding for plaintiff on either count. There is no way to precisely ascertain if the jury based its award of punitive damages on the legal theory in count one or in count two or both. It, however, is doubtful the jury engaged in the mental gymnastics necessary to assign punitive damages to a particular legal theory reflected in the two counts. It is unnecessary to engage in speculation to resolve this question. The counts of the cause of action merely

form the legal basis to invoke the discretion of the jury to award punitive damages. The award of such damages is in response to the facts as the jury finds them. Here the same facts were offered in support of the two counts of the cause of action and the elements of the two counts are essentially the same. The jury's finding on count two necessarily found the facts in favor of plaintiff. These facts as found by the jury are sufficient to sustain the punitive damage award under count two.

Defendant does not claim the instructions regarding count two were in error. We therefore hold even if count one was submitted on erroneous instructions the error is not prejudicial because the judgment can be sustained on the basis of the verdict respecting count two. *See Berger v. Southern Pac. Co.,* 144 Cal App2d 1, 300 P2d 170, 60 ALR2d 1104 (1956); *Leoni v. Delany,* 83 Cal App2d 303, 188 P2d 765, 189 P2d 517 (1948).

In the second assignment of error the defendant claims the court should have allowed evidence of defendant's offers of settlement made after the complaint was filed. Defendant made an offer of proof which consisted of testimony from one of defendant's attorneys regarding settlement negotiations. He testified that plaintiff's attorney had indicated that plaintiff would accept a new Ford Mustang as a substitute for the damaged Pinto. Defendant then offered a new Mustang, which was rejected, and defendant was told that plaintiff desired a cash settlement. Defendant then offered $5,200 as a compromise, which was in turn rejected by plaintiff.

■ Defendant argues the evidence was offered to show its good faith in dealing with plaintiff which it contends is relevant on the issue of punitive damages. Any prejudice to plaintiff, it is argued, can be cured by an instruction restricting the use of the evidence for that purpose. Before evidence can be admitted, even with limiting instructions, it must be relevant and material to an issue in controversy. *State v. Manrique,*

[ 415 ]

271 Or 201, 531 P2d 239 (1975); *State of Oregon v. Long,* 195 Or 81, 244 P2d 1033 (1952); *State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* (1977), *cert den* (1978). If the evidence is determined to be relevant the next inquiry is whether it nevertheless is excludable under some other rule of evidence, for example, that the prejudicial impact of the evidence outweighs the probative value inherent in its relevancy. *See State v. Manrique* and *State v. Hockings,* both *supra.*

Respecting the issue of relevance, defendant argues that since a punitive damage award is based on the bad faith or malice of the defendant, evidence of defendant's good faith is admissible to counter inferences of bad faith. Defendant further argues, since this court has allowed plaintiffs in punitive damage actions, to show aggravating factors which occur after the complained of event, it would be grossly unfair to prevent defendant from showing mitigating factors.

■ Evidence of the parties' conduct subsequent to the event, which produces plaintiff's claim for punitive damages, whether aggravating or mitigating, must be probative of the defendant's state of mind at the time of the transaction. *Vandermeer v. Pacific N. W. Develop.,* 274 Or 221, 545 P2d 868 (1976).

In that case plaintiff, who was a tenant in an apartment house owned by defendant, was arrested by defendant's representative during a heated argument concerning her use of the recreation room of the apartment house. During this argument defendant's representative made several threats against plaintiff including the threat of eviction. Plaintiff claimed general and punitive damages for false imprisonment. During trial plaintiff was allowed to prove that subsequent to her arrest defendant attempted to evict her. We held the evidence was admissible on the issue of punitive damages. We said:

"* * * While defendant had a right to evict for no cause at all if it gave proper notice, defendant's resolve

to carry through on the threats is probative of the existence of ill will and dislike at the time the threats were made. This evidence of ill will and dislike is relevant to the motivation which may have prompted such a severe sanction as arrest and jail for what would appear to be a relatively minor matter. * * *" 274 Or at 230.

We then discussed the prejudicial impact of this evidence on defendant and concluded the scales tipped in favor of its probative value.

In the case here at issue the evidence of contrition and a conciliatory attitude of one of defendant's agents after the complaint was filed has scant relevance respecting the state of mind of other agents of defendant at the time the car was sold to plaintiff. Assuming the evidence established the good faith and good will of defendant's president toward plaintiff, such conduct came as response to the complaint, which prayed for substantial punitive damages. The evidence shows a desire to "buy peace" and minimize the risk of an award of punitive damages and not that defendant dealt in good faith with plaintiff in selling the car.

██ Any probative value, which we have indicated is minimal, is outweighed by the possible prejudice to plaintiff from the evidence. The jury could very well infer that the plaintiff was not dealing in good faith in the settlement negotiations and hold this against him in assessing punitive damages. Whether the plaintiff has adopted a conciliatory attitude in resolving the controversy is not relevant in determining if defendant should pay punitive damages. Additionally, evidence that the plaintiff offered to settle for a new car, and later for a sum of money considerably less than the amount prayed for, could be considered by the jury as an indication that the plaintiff was willing to forego punitive damages and limit his recovery to actual loss. This is exactly the danger ORS 41.810 was designed to eliminate. It is doubtful a limiting instruction could erase these impressions from the jury's mind.

[ 417 ]

We do not mean to say a curative instruction is always ineffectual when relevant evidence is susceptible of improper inferences. However, in striking the balance between probative value and prejudicial impact it is proper to consider the limited utility of a curative instruction in assessing prejudice. We conclude the offer of proof was properly rejected.

The judgment is affirmed.

**LENT, J.,** specially concurring.

I concur in the opinion of the court but would add a thought or two concerning the troublesome task of the trial judge in framing proper jury instructions in cases such as this. Here the plaintiff sought recovery on two counts: common law fraud and violation of the Unlawful Trade Practices Act. The same conduct of the defendant was to be the basis of recovery under either theory, and the amount of damages recoverable did not depend upon which count might serve as the vehicle of recovery.

The trial judge instructed, in part, as follows:

"In order to prove that defendant is liable for fraud, plaintiff has the burden of proving each and every element of fraud, as I have defined those elements for you, by *clear and convincing evidence.* By clear and convincing, I mean that the evidence of fraud must be such as to persuade you that the truth of the facts is highly probable." (emphasis added)

and, further, that

"* * * The person having the affirmative of the issue in this case would be the plaintiff, *he has to prove either fraud or a violation of the Unlawful Trade Practices Act, as alleged in those respects in the complaint on file herein,* and as I was getting ready to say, or perhaps I did say, *the burden of proof is sustained by what is known as a preponderance of the evidence.* It means the greater weight of the evidence. It is such evidence that when weighed with that opposed to it has more convincing force and is more probably true and accurate." (emphasis added)

Defendant contends that these are contradictory instructions, and we have assumed them so to be.

The task of the trial judge to avoid such contradiction is troublesome because of judge-made law that common law fraud can only be established by "clear and convincing" evidence and that juries must be so instructed. *See Metropolitan Cas. Ins. Co. v. Lesher*, 152 Or 161, 52 P2d 1133 (1935) and *Cook v. Michael*, 214 Or 513, 33 P2d 1026 (1958), which partially overruled *Lesher* insofar as the applicability to civil cases of ORS 41.110 (defining "satisfactory evidence") is concerned. A juror on a case such as this must find it strange indeed that plaintiff may recover under the statute if he has made it appear from the evidence that it is more probable than not that the facts are as he asserts them to be, but plaintiff can recover on the other count only if the same evidence is "clear and convincing." Obviously, if the jury believes plaintiff's version of the events, the jury will be convinced, and the evidence perforce must have been "convincing," whether or not "clear."

Let us examine a hypothetical situtation. P accuses D of fraudulently depriving P of his property. The only evidence adduced is the testimony of P, which we assume to be sufficient, if believed, to establish fraud by D. P is impeached by showing that he has been convicted in an unrelated matter of the crime of perjury. D's testimony is a denial that he did the things P testified D did. If the jury believes P, it necessarily therein finds that he has established his case by a preponderance of the evidence, by clear and convincing evidence, and, if the setting be a criminal trial, beyond a reasonable doubt.[1]

---

[1] Compare Mr. Justice Tongue's language from *Krause v. Eugene Dodge, Inc.*, 265 Or 486, 509 P2d 1199 (1973):

"We are fully aware of the rule that fraud must be proved by evidence which is 'clear and convincing,' the test of which is that the evidence must be such that the truth of the facts asserted is 'highly probable.' *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958).

I submit that the rule that fraud can only be established by "clear and convincing" evidence has little practical effect, at least in cases where the evidence is mostly direct as distinguished from indirect or circumstantial. The use of the adjectives "clear" and "convincing" in instructions can mean little to a jury without further explanation that proof by clear and convincing evidence means that the truth of the facts asserted is "highly probable." *Cook v. Michael,* 214 Or 513, 330 P2d 1026 (1958).[2] As soon as those words are used, however, the instruction is arguably afoul of ORS 17.250(5),[3] despite what was said in *Cook* that a fraud case is not a "proper occasion" for an instruction in the terms of ORS 17.250 (5).

In conclusion, I believe that instructing jurors that the evidence must be "clear and convincing" to establish fraud is of little aid to them, may be downright confusing in a case such as this, and is arguably contrary to the statutory law. If it is the latter, the statute must prevail, and this judge-made concept

"The question of the credibility of witnesses, however, is ordinarily one to be decided by the jury and if, despite inconsistencies in the testimony of a witness, the jury chooses to believe that witness, such testimony has been held to be sufficient to support a jury verdict even in criminal cases, in which the burden of the state is to prove guilt beyond a reasonable doubt. *See State v. Yates,* 239 Or 596, 598 399 P2d 161 (1965), and *State v. Pace,* 187 Or 498, 504, 212 P2d 755 (1949). See also *Thom v. Bailey,* 257 Or 572, 579, 481 P2d 355 (1971)." 265 Or at 502, 503.

*Compare, also,* the discussion in *Wimer v. Smith,* 22 Or 469, 30 P 416 (1892), to the effect that the testimony of an impeached witness may be insufficient, without more, to establish fraud. It must be remembered, however, that this case antedated Amended Art. VII, § 3, of the Oregon Constitution, and further one should note that in a jury case, "they are the exclusive judges" of a witness' credibility. ORS 44.370

[2] I do not agree with the statement in *Cook v. Michael, supra,* that "clear and convincing" names a degree of proof. Those words do no more than to characterize evidence.

[3] The statute provides that the jury is to be instructed "on all proper occasions" in civil cases that the jury's finding "shall be according to the preponderance of the evidence."

fashioned out of mistrust of the jury system would disappear. With it would disappear the task of the trial judge which the *Cook* court characterized as "troublesome."