COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and Powell
Argued at Richmond, Virginia


TODD KEITH WELLS

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0318-10-2                     JUDGE CLEO E. POWELL
                                                    AUGUST 2, 2011

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                            Cheryl V. Higgins, Judge

            Elizabeth P. Murtagh, Deputy Public Defender (Office of the
            Public Defender, on brief), for appellant.

            Gregory W. Franklin, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Todd Keith Wells ("Wells") appeals his conviction for misdemeanor failure to pay wages, in

violation of Code § 40.1-29(E).  On appeal, Wells contends that the trial court erred by (1) ruling

that the Commonwealth's Attorney of Albemarle County had jurisdiction to prosecute Wells under

Code § 40.1-29; (2) allowing inflammatory testimony into evidence; (3) allowing a photocopy of a

check into evidence; (4) denying Wells' motion to strike the evidence; (5) denying Wells' proposed

jury instruction defining intent to defraud; and (6) imposing a sentence greater than that imposed by

the jury.

                                      I.  BACKGROUND

        During 2007 and 2008, Wells owned and operated A&T Painting in Albemarle County.

At all times pertinent to this case, Wells employed five men as painters:  Edgar Ramirez

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

("Ramirez"), Augustine Dominguez ("Dominguez"), Jaime Trujillo, Angel Canuto, and Alejandro Dominguez-Hernandez ("Dominguez-Hernandez").

In the fall of 2007, Wells contracted with a builder, Church Hill Homes, to paint new homes that were being built in the Crozet community in Albemarle County. In December of 2007, and continuing into January of 2008, Wells ran into financial difficulties and was unable to pay his employees. Wells informed his employees about the difficulties, but continued to have his employees come in to work, promising that he would pay them as soon as he was able.

On January 31, 2008, Dominguez, Ramirez, and Dominguez-Hernandez worked a full day. The next day, February 1, 2008, the men worked a half-day before deciding that they were not going to work anymore unless they got paid.

Later that same day, Ramirez and at least one other employee went to Wells' house to inquire about their paychecks. Upon being confronted by Ramirez and the other employee, Wells gave the men personal checks for all five employees. According to Ramirez, Wells informed him that they could cash the checks that day.[1] When Ramirez and the others attempted to cash the checks later that day, the bank informed them that there were insufficient funds in the account.

On February 19, 2008, Ramirez, Dominguez, and Dominguez-Hernandez contacted Tim Freilich ("Freilich"), an attorney who worked at the Legal Aid Justice Center, and informed him about their situation. The next day, on February 20, 2008, Freilich contacted Wells on behalf of the men. Freilich identified himself to Wells and informed him that he "had spoken with some individuals who said they had done work for him and had not been paid." Wells initially denied

---

[1] At trial, Wells claimed that he informed Ramirez that there was not enough money in his account at that time and that they would need to wait until the next week before they cashed the checks. There is some support for Wells' statement, as the check Wells gave to Ramirez was dated February 5, 2008, as opposed to February 1, 2008.

employing any of the men. When confronted with the fact that he had written checks to the men, Wells told Freilich that he didn't have to pay the men because of their immigration status.[2]

Wells was subsequently charged with felony failure and/or refusal to pay wages under Code § 40.1-29(E).[3] Prior to trial, Wells moved to dismiss the charges, because the Commissioner of Labor and Industry had not conducted an investigation or instructed the Commonwealth to prosecute the matter. Wells also filed a motion *in limine* objecting to any testimony from Freilich. Both motions were denied.

At Wells' subsequent jury trial, Dominguez testified that Wells owed him approximately $4,600; Ramirez claimed he was owed $3,245; and Dominguez-Hernandez claimed he was owed $928.[4] During Ramirez's testimony, the Commonwealth offered a photocopy of the check Ramirez testified he had received from Wells and attempted to cash. Wells objected, arguing that the photocopy was not the best evidence. Wells further contended that the check contained hearsay, as there were markings on the photocopied check indicating why the check had not been honored. The trial court allowed the photocopy into evidence, but only after the hearsay portions had been redacted.

---

[2] It is implied that all of the men were undocumented workers.

[3] Code § 40.1-29(E) states:

> An employer who willfully and with intent to defraud fails or refuses to pay wages in accordance with this section is guilty of a Class 1 misdemeanor if the value of the wages earned and not paid by the employer is less than $ 10,000 and is guilty of a Class 6 felony if the value of the wages earned and not paid is $ 10,000 or more or, regardless of the value of the wages earned and not paid, if the conviction is a second or subsequent conviction under this section. For purposes of this section, the determination as to the "value of the wages earned" shall be made by combining all wages the employer failed or refused to pay pursuant to this section.

[4] Neither Jaime Trujillo nor Angel Canuto testified. Although it was alleged that Wells owed them money as well, no evidence was presented as to the amount they were owed.

After the Commonwealth rested, Wells moved to strike the charges, arguing that the Commonwealth had failed to prove that he owed more than $10,000 in wages, that the men were his employees, or that he had the requisite intent to defraud. After the Commonwealth conceded it had failed to prove that Wells owed more than $10,000, the charge was dropped from a felony to a misdemeanor. The trial court denied the other motions to strike.

Wells subsequently took the stand in his own defense. According to Wells, he intended to pay the men, however, he could not because Church Hill Homes had not paid him. He further testified that Church Hill Homes had gone bankrupt and he was never paid for the work the men performed.

After both sides finished putting on their evidence, Wells sought to include a jury instruction defining the term "intent to defraud." Wells' proffered jury instruction stated:

> The [term] "intent to defraud" means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to labor.[5]

The trial court denied the proffered jury instruction, finding that the phrase "intent to defraud" did not need any further definition and that the definition proffered by Wells could be confusing.

The jury found Wells guilty of misdemeanor failure and/or refusal to pay wages, in violation of Code § 40.1-29(E) and fixed his punishment at a fine of $2,500. After the jury was discharged, the Commonwealth requested that the trial court order Wells to pay restitution in

---

[5] The proffered instruction was crafted from language this Court used to define the term "intent to defraud" in the context of passing bad checks under Code § 18.2-181. Bray v. Commonwealth, 9 Va. App. 417, 422, 388 S.E.2d 837, 839 (1990) ("Intent to defraud means that the defendant intends to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.'" (quoting Black's Law Dictionary 381 (5th ed. 1979))).

addition to the fine. The trial court, after hearing argument from Wells and the Commonwealth, suspended Wells' fine conditioned upon his payment of $8,548[6] in restitution.

Wells appeals.

## II. ANALYSIS

On appeal, Wells raises six assignments of error. In his first assignment off error, Wells contends that the Commonwealth's Attorney of Albemarle County did not have jurisdiction to prosecute him under Code § 40.1-29(E). Two evidentiary rulings (allowing Freilich's testimony and a photocopy of a check into evidence) are the subjects of Wells' second and third assignments of error. In his fourth assignment of error, Wells attacks the sufficiency of the evidence. His fifth assignment of error contests the trial court's refusal to give Wells' proffered jury instruction on the "intent to defraud" element of the crime. Wells' final assignment of error addresses the trial court's decision to impose restitution in an amount greater than the sentence imposed by the jury.

We conclude the trial court committed reversible error with regard to the fifth assignment of error. As such, we need not address the fourth and sixth assignments of error. We will, however, address the first, second, and third assignments of error since they present issues that may arise again if the Commonwealth decides to retry Wells. See Lopez v. Dobson, 240 Va. 421, 424, 397 S.E.2d 863, 865 (1990) (addressing issues that may arise again upon retrial).

### A. Jurisdiction

Wells argues that jurisdiction to investigate and prosecute complaints under Title 40.1 of the Virginia Code rests wholly with the Commissioner of the Department of Labor and Industry (the "Commissioner"). Wells primarily relies upon Code § 40.1-6(2), which establishes that the Commissioner is empowered to "[e]nforce the provisions of [Title 40.1] and *shall cause to be*

---

[6] This represented the total amount Ramirez, Dominguez, and Dominguez-Hernandez testified they were owed by Wells.

*prosecuted* all violations of law relating to employers or business establishments before any court of competent jurisdiction." (Emphasis added). Thus, according to Wells, because the Commissioner neither investigated, prosecuted, nor delegated any authority to the Commonwealth's Attorney for Albemarle County on this matter, the matter was not ripe for trial and therefore he could not be prosecuted under Code § 40.1-29(E).

Implicit in Wells' argument is the notion that, by specifically designating the Commissioner's powers and duties, the General Assembly restricted the jurisdiction of the Commonwealth's Attorney to prosecute matters under Title 40.1. It is well settled that procedural statutes, such as this one, do not create any substantive rights against prosecution absent a specific legislative intent to do so. Jamborsky v. Baskins, 247 Va. 506, 442 S.E.2d 636 (1994).

> The procedural nature of this requirement [that the Commissioner shall investigate and cause to be prosecuted all crimes under Title 40.1] is underscored by this Court's repeated holding that the use of "shall," in a statute requiring action by a public official, is directory and not mandatory unless the statute manifests a contrary intent. As this Court explained in Commonwealth v. Rafferty, 241 Va. 319, 402 S.E.2d 17 (1991), "[a] statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute." Id. at 324, 402 S.E.2d at 20.

Id. at 511, 442 S.E.2d at 638.

Wells cites to Code § 40.1-7 as indicating specific legislative intent that the Commissioner be wholly responsible for investigation and prosecution of claims under Title 40.1. According to Wells, Code § 40.1-7 stands for the proposition that a Commonwealth's Attorney can only attain jurisdiction to prosecute any crimes under Title 40.1 "upon the request of the Commissioner." We disagree.

- 6 -

Code § 40.1-7 states:

> The attorney for the Commonwealth of the proper county or city, upon the request of the Commissioner, or any of his authorized representatives, shall prosecute any violation of law or rule or regulation adopted thereunder which it is made the duty of the Commissioner to enforce.

As an initial matter, it should be noted that, like Code § 40.1-6(2), Code § 40.1-7 is also directory in nature. Furthermore, even if Code § 40.1-7 were mandatory in nature, we do not read Code § 40.1-7 as a limitation on a Commonwealth's Attorney's ability to prosecute crimes under Title 40.1. Rather, the plain language of the statute indicates that, "upon the request of the Commissioner," a Commonwealth's Attorney would be *required* to prosecute crimes under Title 40.1. Thus, the only limitation under Code § 40.1-7 would be on a Commonwealth's Attorney using his discretion to *not* prosecute crimes under Title 40.1 if requested to do so by the Commissioner.

With regard to the criminal aspects of Code § 40.1-29(E), it must be read in conjunction with the broad terms of Code § 15.2-1627(B). Under Code § 15.2-1627(B) a Commonwealth's Attorney has "the duty of prosecuting all warrants, indictments or informations charging a felony." Wells was indicted under Code § 40.1-29(E) for failing to pay more than $10,000 in wages, a Class 6 felony. As a Class 6 felony, it is clearly within the discretion of a Commonwealth's Attorney to prosecute, regardless of whether the Commissioner investigated, prosecuted or delegated his authority.

### B. Inflammatory Testimony

Wells next argues that the trial court erred in denying his motion *in limine* to not allow any testimony from Freilich, as the testimony was irrelevant and inflammatory.[7] According to Wells,

---

[7] During argument on the motion, the Commonwealth proffered that Freilich would testify that Wells denied employing Dominguez, Dominguez-Hernandez, and Ramirez, that Wells stated that he was not going to pay Dominguez, Dominguez-Hernandez, and Ramirez, that

the conversation with Freilich occurred almost three weeks after the alleged criminal activity, therefore it had no bearing on whether Wells intended to not pay Ramirez, Dominguez, and Dominguez-Hernandez.  Wells further contends that the prejudicial nature of the testimony far outweighed its probative value.  We disagree.

"Generally, the admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion."  Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."  Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

> Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted.  However, evidence of collateral facts and facts incapable of supporting an inference on the issue presented are irrelevant and cannot be accepted in evidence.  Such irrelevant evidence tends to draw the jurors' attention toward immaterial matters and, if such evidence deals with misconduct of the accused, may tend to prejudice the jurors against the defendant.  Nevertheless, evidence which tends to prove the crime charged is admissible though it may necessarily involve misconduct on the part of the defendant.

Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

"Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant."  Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (quoting McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 629, 74 S.E.2d 165, 169 (1953)).  "The test establishing relevancy is not whether the proposed evidence conclusively proves a fact, but whether it has any

---

he did not have to pay them because of their immigration status, and that Wells commented that he would make Freilich "look like an F'ing [sic] clown" if Freilich decided to sue on behalf of Dominguez, Dominguez-Hernandez, and Ramirez.

tendency to establish a fact in issue." Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988).

The motion *in limine* was granted in part and denied in part. Specifically, the trial court found that the statements Wells made to Freilich denying that he employed Dominguez, Dominguez-Hernandez, and Ramirez, that he was not going to pay them, and that he did not have to pay them because they were illegal aliens "could show why he had not paid [Dominguez, Dominguez-Hernandez, and Ramirez]." Thus, the testimony was clearly relevant, as it had a tendency to establish Wells' original intent in not paying the men. The trial court determined that the rest of the statements Wells made to Freilich were not relevant and granted the motion *in limine* as to those statements.

Turning toward the inflammatory nature of the testimony, it is well established that

> when relevant evidence is offered which may be inflammatory and which may have a tendency to prejudice jurors against the defendant, its relevancy "must be weighed against the tendency of the offered evidence to produce passion and prejudice out of proportion to its probative value." State v. Flett, 234 Or. 124, 127, 380 P.2d 634, 636 (1963). The responsibility for balancing these competing considerations is largely within the sound discretion of the trial judge.

Coe, 231 Va. at 87, 340 S.E.2d at 823.

Here, the trial court clearly weighed the probative and prejudicial value of the testimony before admitting it. The trial court only allowed in the evidence that was probative of Wells' intent, as demonstrated by the fact that the trial court granted the motion *in limine* with regard to certain portions of Freilich's testimony. Furthermore, Wells failed to demonstrate that any prejudice was out of proportion with the probative value of the evidence. Therefore, we cannot say that the trial court abused its discretion in allowing the testimony into evidence.

C. Best Evidence

Wells argues that the trial court erred in allowing the copy of the check he gave to Ramirez into evidence, as it violated the Best Evidence Rule. Wells contends that, because there was no evidence that the original had been lost, destroyed or was otherwise unavailable and because the Commonwealth made no effort to produce the original check, the check should not have been allowed into evidence.

It is important to note, however, that Wells never disputes that he gave the check to Ramirez or the accuracy of the un-redacted portions of the check. Indeed, Wells acknowledged that he wrote the check. "This Court has noted that proper circumstances exist to treat a photocopy as a duplicate original when the accuracy of the photocopy is not disputed." Alloca v. Alloca, 23 Va. App. 571, 580, 478 S.E.2d 702, 706 (1996). Accordingly, the trial court did not err in allowing the photocopy of the check into evidence.

D. Jury Instruction

Wells argues that the trial court erred in refusing his jury instruction on the definition of "intent to defraud." Specifically, Wells contends that enough evidence was presented by both parties to justify giving the jury instruction and his proffered jury instruction was a proper statement of the law. We agree.

The trial court has broad discretion in giving or denying requested jury instructions. Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (en banc). However, "[o]n appeal, when the issue is a refused jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Lynn v. Commonwealth, 27 Va. App. 336, 344, 499 S.E.2d 1, 4-5 (1998). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v.

Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.'" Id. (quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)). "'Unless [the appropriate] elements are defined by instructions available to the members of the jury during their deliberation, they cannot properly determine whether the Commonwealth has carried its burden. . . .'" Campbell v. Commonwealth, 14 Va. App. 988, 992, 421 S.E.2d 652, 655 (1992) (en banc) (quoting Dowdy, 220 Va. at 116, 255 S.E.2d at 508) (substitutions in original), aff'd on other grounds, 246 Va. 174, 431 S.E.2d 648 (1993).

Here, the trial court erred in finding that, under the facts of this case, the term "intent to defraud" did not need any further definition. As an initial matter, the issue of whether Wells acted with intent to defraud is an essential element of the crime of failure to pay wages under Code § 40.1-29(E). See Makarov v. Commonwealth, 217 Va. 381, 385, 228 S.E.2d 573, 575 (1976) (holding that the previous version of Code § 40.1-29 was unconstitutional because it failed to include "intent to defraud" or "wilfullness [sic] tantamount to fraud" as an essential element of the offense). The issue was clearly raised by the evidence, as the only contested issue before the trial court was Wells' intent in his failure to pay.

Moreover, at trial no less than three mutually exclusive theories were raised relating to the Commonwealth's burden of proof with regard to the time when the intent to defraud must exist. Wells argued that the Commonwealth had to prove that the intent existed at the time he initially procured the work. The Commonwealth, on the other hand, argued that the intent to defraud only needed to be present at the time Wells failed to pay. In the alternative, the Commonwealth argued that it need only prove that Wells possessed the necessary intent to defraud when he decided to keep the men working, knowing that he didn't have the money to pay them. Such divergent theories

- 11 -

made it necessary for the trial court to provide a jury instruction that defined "intent to defraud" and that covered all of the issues that the evidence fairly raised.

Furthermore, the term "intent to defraud" has varying meanings, depending on the context in which the term is used. Compare Campbell, 14 Va. App. at 990, 421 S.E.2d at 653 (defining "intent to defraud" in the context of forgery as acting "with an evil intent, or with the specific intent to deceive or trick"), with Bray, 9 Va. App. at 422, 388 S.E.2d at 839 (defining "intent to defraud" in the context of issuing bad checks as intending to "'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or power with reference to property.'" (quoting Black's Law Dictionary 381 (5th ed. 1979))). Fraud is commonly defined as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law Dictionary 731 (9th ed. 2009). As such, the intent to defraud necessarily has two salient characteristics: 1) a misrepresentation or concealment of a material fact combined with 2) the intent to induce another to act to his detriment. The intent to defraud can be established in the present case by proof that Wells misrepresented or concealed a material fact with the intent of inducing Ramirez, Dominguez, and Dominguez-Hernandez to act to their detriment. Such misrepresentation or concealment could occur at any point during the employment process, so long as it was intended to lead Ramirez, Dominguez, and Dominguez-Hernandez to begin and/or continue working to their detriment.

In addition to rejecting the jury instruction as unnecessary, the trial court further ruled that the proffered instruction would only serve to confuse the jury. "[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991).

> We adhere to the rule that the trial court is not required to amend or correct an erroneous instruction, but the rule is subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court

- 12 -

> to refuse a defective instruction instead of correcting it and giving it in the proper form. A jury should not be left in the dark on the subject.

Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973).

Although we agree that the proffered instruction was confusing, the trial court erred in failing to correct the instruction. By failing to instruct the jury on the issue of intent to defraud, the trial court failed to sufficiently inform the jury on the most contentious issue before it. Accordingly, we hold that the trial court committed reversible error.

## III. CONCLUSION

The trial court correctly determined that the Commonwealth's Attorney has jurisdiction to prosecute violations of Code § 40.1-29(E) absent involvement on the part of the Commissioner. Furthermore, we find no error in the trial court's decision to allow Freilich's testimony and a photocopy of the check into evidence. However, contrary to the trial court's finding that the term "intent to defraud" did not need any further definition, the law is clear that Wells was entitled to a jury instruction defining the term "intent to defraud" in the context of failure to pay wages. Similarly, the trial court had an affirmative duty to correct the confusing instruction offered by Wells. Accordingly, we must reverse and remand for a new trial if the Commonwealth be so advised.

Affirmed in part,
reversed and
remanded in part.